Entered: December 2nd, 2024
Signed: December 2nd, 2024

**SO ORDERED**

For the reasons stated on the record at the hearing held on December 2, 2024.



_____
**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re: | (Chapter 11) |
| Prepaid Wireless Group, LLC,[1] | Case No. 24-18852 (MCR) |
| Debtor. | |

**FINAL ORDER AUTHORIZING POSTPETITION USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO T-MOBILE USA, INC.**

Upon consideration of the Motion of the Debtor and Debtor-in-Possession for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to T-Mobile USA, Inc., and (III) Scheduling a Final Hearing [Docket No. 18] (the "**Motion**"); pursuant to sections 105, 361, 362, 363, and 507(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are: Prepaid Wireless Group, LLC (5159). The Debtor's principal address is 6100 Executive Boulevard, Suite 202, Rockville, MD 20852.

68661/0001-48873180v4

**Rules**") 2002, 4001, 6003, 6004 and 9014, and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the relief requested therein being a core proceeding as defined in 28 U.S.C. § 157(b)(2); and due and proper notice having been given; and the Court having conducted a hearing on interim use of cash collateral on November 7, 2024 and for the reasons stated on the record, entered the Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to T-Mobile USA, Inc., and (III) Scheduling a Final Hearing pursuant to Bankruptcy Rule 4001(b) on November 8, 2024 [Docket No. 39]; and the Court having conducted a final hearing on the Motion on December 2, 2024 (the "**Final Hearing**"), and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate, creditors and equity security holders and upon due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:[2]

1) *Motion Granted*. The Motion is **GRANTED** on a final basis, as set forth herein. Any objection to the Motion that was not withdrawn or resolved is hereby overruled.

2) *Jurisdiction*. This Court has core jurisdiction over the above-captioned chapter 11 case (the "**Chapter 11 Case**") commenced on October 21, 2024 (the "**Petition Date**"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3) *Statutory Committee.* As of the date hereof, an official committee of unsecured creditors has not been appointed in the Chapter 11 Case.

4) *Findings Regarding the Use of Cash Collateral.*

a) Good cause has been shown for the entry of this Final Order.

b) The Debtor has an immediate need to use the "Cash Collateral" to permit, among other things, the orderly continuation of its business, pay its operating expenses, and preserve the going concern value of the Debtor. For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code in which T-Mobile may have a perfected lien, security interest or other interest, whether existing on the Petition Date, arising pursuant to this Order, or otherwise.

c) The preservation and maintenance of the Debtor's business and assets is necessary to maximize value. Absent the Debtor's ability to use Cash Collateral in accordance with the terms hereof, the continued operation of the Debtor's businesses would not be possible, and irreparable harm to the Debtor, its estate, and its creditors would occur. Authorization to use the Cash Collateral is therefore (i) critical to the Debtor's ability to maximize the value of this Chapter 11 estate, (ii) in the best interests of the Debtor and its estate, and (iii) necessary to avoid immediate and irreparable harm to the Debtor, its creditors, and its assets, business, goodwill, reputation, and affiliates.

d) The terms of the use of the Cash Collateral pursuant to this Order are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

e) Prior to the Petition Date, the Debtor and T-Mobile USA, Inc. ("**T-Mobile**") entered into a Wholesale Supply Agreement dated January 3, 2012 (as amended, the "**WSA**").

Without prejudice to the rights of any party in interest, including the Debtor, under the WSA and as security for payment of amounts due under the WSA, the Debtor granted to T-Mobile a security interest in substantially all of the Debtor's assets as more fully described in the WSA (the "**Pre-Petition Collateral**").

  f) Without prejudice to the rights of any party in interest, including the Debtor, T-Mobile asserts that its security interest in the Pre-Petition Collateral was properly perfected and is valid and enforceable as a first priority lien on and security interest in the Pre-Petition Collateral.

  g) The continued use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor and T-Mobile and, therefore, the use of the Cash Collateral by the Debtor in accordance with the terms of this Order shall be deemed to have been extended, issued, or made in "good faith."

  h) The Debtor has filed prior to the Final Hearing a proposed budget (such budget, the "**Budget**"), a copy of which is attached hereto as **Exhibit A.** The Budget reflects the Debtor's anticipated net cash flow and anticipated disbursements on a weekly basis for the period from November 29, 2024 through and including March 31, 2025.[3] The Budget may be modified, amended, or updated from time to time in accordance with the terms of this Order and upon such modification, shall supplement and replace the Budget (the Budget, following entry of this Final Order, and each subsequently approved budget, shall each constitute without duplication, an "**Approved Budget**"). The Budget is reasonable under the facts and circumstances.

---

[3] As provided in Paragraph 10 below, the Budget is not intended to, and shall not restrict, the Debtor's ability and obligations to pay its professionals in accordance with Court approved procedures, and the fees projected are simply estimates from which actual professional fees and expenses may vary.

i) Notwithstanding anything to the contrary in this Order and the Budget, T-Mobile does not and has not agreed to waive or modify any of the payment or other terms in the WSA. Any deviation from the terms of the WSA in this Order or the Budget is inadvertent and does not affect a modification of the WSA

j) If the Budget does not accurately reflect the post-petition amounts owed to T-Mobile under the WSA, the Debtor agrees that the Budget shall be deemed amended to accurately reflect such amounts, subject to the Debtor and T-Mobile agreeing on the amounts due. The Court recognizes that the actual amounts due to be paid to T-Mobile in future months under the WSA varies from month to month, and the Budget reflects the Debtor's best estimate at the time the Budget was prepared, with the understanding that the actual amounts due to be paid to T-Mobile may vary from the projections. The Debtor maintains, and the Court agrees and finds, that the best adequate protection of T-Mobile's interest in Cash Collateral is provided by the Debtor's agreement to pay the amounts properly due to T-Mobile each month so that the Debtor is current on all such postpetition payments even though the Debtor is not yet obligated to assume or reject the WSA.

k) Nothing in this Order shall be construed to prohibit or reduce T-Mobile's right to seek discovery on any matter, including the Budget or any subsequent budget, or limit T-Mobile's right to challenge any subsequent budget, nor shall it limit in any way the Debtor's rights to object to or oppose any such actions by T-Mobile. In addition, notwithstanding any other provision hereof, the protections granted to T-Mobile pursuant hereto are without prejudice to the right of T-Mobile to seek to modify the protections provided hereby so as to provide different or additional protections, and without prejudice to the rights of the Debtor to oppose any such modification or request for additional protections.

68661/0001-48873180v4

5) *Authorization of Use of Cash Collateral*.

a) Subject to the terms hereof, the Debtor is hereby authorized to use the Cash Collateral for (a) working capital requirements, (b) general corporate and other business purposes, and (c) the costs and expenses of administering this Chapter 11 Case (including payments benefiting court-approved Professionals from the Carve-Out) incurred in the Chapter 11 Case, subject to the limits set forth in the Approved Budget.

6) *Entitlement to Adequate Protection*.

a) T-Mobile is entitled to adequate protection of its interest in Pre-Petition Collateral in an amount equal to the aggregate postpetition diminution in value of the Cash Collateral, from and after the Petition Date (such diminution in value, the "**Diminution in Value**"), including without limitation, to the extent such Diminution in Value results from the subordination of T-Mobile's lien to the Carve-Out, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362.

7) *Adequate Protection Claim and Lien*.

a) As adequate protection for the Diminution in Value of the Prepetition Collateral, T-Mobile is hereby granted the following claims, liens, rights, and benefits (collectively, the "**Adequate Protection Obligations**"):

i) ***Superpriority Claim.*** The Adequate Protection Obligations due to T-Mobile shall constitute allowed a superpriority claim against the Debtor as provided in Bankruptcy Code section 507(b) (collectively, the "**Superpriority Claim**"), with priority over any and all administrative expenses and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of

the kind specified in Bankruptcy Code sections 503(b) and 507(b), subject and subordinate only to the Carve-Out;

ii) ***Adequate Protection Lien***. Subject to the Carve-Out, as security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, financing statements, or other similar documents, or further act by T-Mobile or the Debtor, T-Mobile is hereby granted a valid, binding, enforceable, and duly perfected security interest and replacement lien under 11 U.S.C. § 361(2) in all assets of the Debtor (excluding Avoidance Actions, as defined below), which are or have been acquired, generated, or received by the Debtor subsequent to the Petition Date, and the proceeds of same: (i) only to the extent that T-Mobile's Cash Collateral is used by the Debtor and such use results in Diminution in Value; (ii) only to the extent T-Mobile's prepetition lien is valid; and (iii) with the same priority in the postpetition collateral and proceeds thereof that T-Mobile held in the Pre-Petition Collateral. Notwithstanding the foregoing, T-Mobile shall not have a lien on causes of action (including causes of action arising under Bankruptcy Code section 549 and any related action under Bankruptcy Code section 550) and, subject to entry of the Final Order, the proceeds of any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 550 (except as provided above), or 553 or the proceeds of any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law (collectively, the "**Avoidance Actions**"). In addition, this Order shall be without prejudice to (i) the Debtor's rights to object to T-Mobile's claims and to assert counterclaims and defenses with respect to T-Mobile's claims, and (ii) T-Mobile's rights to assert defenses with respect to any such counterclaims asserted by the Debtor.

iii) **_Financial Reporting_.** The Budget is approved. The use of Cash Collateral under this Order shall be in accordance with the Approved Budget and the Debtor is allowed to exceed the amount of any itemized category of expense set forth in the Approved Budget by 10%. T-Mobile and the Debtor may mutually agree to amend the Budget at any time without further Court order. By this Order, the Debtor's use of Cash Collateral is authorized through and including March 31, 2025, and may not be extended other than on the express written consent of T-Mobile or order of the Court, other than as expressly provided below.

iv) The Debtor shall (i) within 25 days of the end of each month, provide T-Mobile with a monthly report of the Debtor's internal balance sheet and income statement and a comparison of the amounts set forth in the Budget to actual results for the prior month; and (ii) upon reasonable notice, at reasonable times, and subject to appropriate confidentiality protections, permit representatives and agents of T-Mobile to discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors.

8) *Carve-Out*.

a) "**Carve-Out**" means the sum of (i) all fees required to be paid to the clerk of the Court and the United States Trustee's Office; and (ii) subject in all respects to the Approved Budget, to the extent allowed, whether by order or otherwise, all accrued and unpaid reasonable fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Code section 327, 328, or 363 (collectively, the "**Professional Persons**").

b) The Debtor shall maintain a segregated account or accounts for the payment of fees owed to Professional Persons, which account shall be funded from the Debtor's cash receipts or cash-on-hand in accordance with the Approved Budget on a weekly basis, in advance

(the "**Carve-Out Reserve Account**"). The Debtor shall pay Professional Persons' fees using the Carve-Out Reserve Account in compliance with the Approved Budget, this Order, any interim compensation procedures, and any further Order of this Court.

9) *Preservation of Rights*.

a) Nothing in this Order shall be deemed to have determined the extent of T-Mobile's interest in Cash Collateral as of the Petition Date, and the Debtor and T-Mobile each reserve their respective rights to dispute or assert the extent to which the Debtor's cash on hand and bank deposits as of the Petition Date constitute T-Mobile's Cash Collateral or are unencumbered by T-Mobile's security interest as of the Petition Date. Nothing herein shall be deemed or construed to limit the Debtor or T-Mobile to the relief granted herein or bar the Debtor or T-Mobile from seeking other and further relief (including without limitation from the terms of this Order) for cause shown on appropriate notice from the Debtor and other parties-in-interest entitled to notice of same. This Order may be modified for cause shown by the Debtor, T-Mobile, or any other party-in-interest. T-Mobile reserves the right to seek additional adequate protection in any further orders governing the Debtor's cash collateral use and the Debtor reserves the right to object to the same.

10) *Termination of Use of Cash Collateral.* Notwithstanding anything to the contrary contained herein, the Debtor's right to use Cash Collateral shall expire on the earliest to occur of: (a) March 31, 2025, (b) the entry by this Court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of this Order; (c) the conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (d) the appointment of a trustee or examiner or other representative with expanded powers for the Debtor; (e) the occurrence of the effective date or consummation of a plan of reorganization; and (f) the Debtor's use of Cash

Collateral during any one-month period exceeds the Budget by more than ten percent (10%), excluding amounts paid to T-Mobile and amounts paid to the Debtors' professionals which shall not be subject to such 10% limit, and further provided that the actual expenses for "Network" services in any month may exceed the amounts in the Budget for each month by no more than twenty percent (20%) (the first such occurrence being hereinafter referred to as the "Termination Event"). On and after the Termination Event, the Debtor shall immediately cease using any of the Cash Collateral; *provided*, *however*, that the Debtor reserves the right to seek Court authorization to continue to use such Cash Collateral, and T-Mobile reserves the right to oppose such relief.

11) *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

12) *Jurisdiction*.

a) The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

13) *Controlling Effects of Order.* To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Order, the terms and provisions of this Order shall govern. This Order shall take effect and be fully enforceable effective immediately upon entry hereof, notwithstanding the possible application Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Order on this Court's docket in the Chapter 11 Case.

CONSENTED TO:

*/s/ David Daniels*
David Daniels (MD Bar No. 17343)
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington D.C. 20005
Tel. 202-654-6364
ddaniels@perkinscoie.com
David Gold, Esquire (*admitted pro hac vice*)
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606
Tel. 312-324-8540
(fax) 312-324-9540
dgold@perkinscoie.com

Attorneys for T-Mobile USA, Inc.

Cc: Irving E. Walker. Esquire
Gary H. Leibowitz, Esquire
H.C. Jones III, Esquire
J. Michael Pardoe, Esquire
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231

Lynn A. Kohen, Assistant United States Trustee
Office of the United States Trustee
101 West Lombard Street
Suite 2625
Baltimore, MD 21201

David Gold, Esquire
Perkins Coie
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511

David W.T. Daniels, Esquire
Perkins Coie
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960

**END OF ORDER**

# EXHIBIT A

# BUDGET

68661/0001-48873180v4

**Prepaid Wireless Group LLC**
*Cash Flow Forecast ($ in 000s)*

| Week Ending: | Actual 10/25/2024 | Actual 11/1/2024 | Actual 11/8/2024 | Actual 11/15/2024 | Fcst. 11/22/2024 | Fcst. 11/29/2024 | Fcst. 12/6/2024 | Fcst. 12/13/2024 | Fcst. 12/20/2024 | Fcst. 12/27/2024 | Fcst. 1/3/2025 | Fcst. 1/10/2025 | Fcst. 1/17/2025 | Fcst. 1/24/2025 | Fcst. 1/31/2025 | Fcst. 2/7/2025 | Fcst. 2/14/2025 | Fcst. 2/21/2025 | Fcst. 2/28/2025 | Fcst. 3/7/2025 | Fcst. 3/14/2025 | Fcst. 3/21/2025 | Fcst. 3/28/2025 | Fcst. 4/4/2025 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Inflows [1] | -- | -- | -- | -- | -- | -- | -- | $13,623.5 | -- | -- | -- | -- | $17,612.6 | -- | -- | -- | $17,296.8 | -- | -- | -- | $16,955.3 | -- | -- | -- | $65,488.2 |
| **Total Revenue** | -- | -- | -- | -- | -- | -- | -- | $13,623.5 | -- | -- | -- | -- | $17,612.6 | -- | -- | -- | $17,296.8 | -- | -- | -- | $16,955.3 | -- | -- | -- | $65,488.2 |
| **Operating Outflows** | | | | | | | | | | | | | | | | | | | | | | | | | |
| T-Mobile [2] | -- | -- | -- | -- | -- | -- | -- | (10,165.0) | -- | -- | -- | -- | (15,755.5) | -- | -- | -- | (15,571.1) | -- | -- | -- | (15,248.2) | -- | -- | -- | ($56,739.8) |
| Network | -- | -- | -- | (343.5) | (698.8) | (71.9) | (686.5) | -- | (0.0) | (14.4) | (671.8) | -- | (0.0) | -- | (734.4) | (20.6) | (0.0) | -- | (653.3) | (20.6) | (0.0) | -- | (653.3) | (13.9) | ($4,583.3) |
| Freight | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Legal | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Taxes | -- | -- | -- | -- | -- | (0.5) | (735.3) | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | ($735.8) |
| Tax Comp | -- | -- | -- | -- | (1.2) | -- | (1.5) | -- | -- | -- | (1.5) | -- | -- | (1.5) | -- | -- | -- | -- | (1.5) | -- | -- | (1.5) | -- | -- | ($8.7) |
| Supplies | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Accounting | -- | -- | -- | -- | -- | -- | (7.5) | -- | (7.5) | -- | -- | (5.0) | -- | -- | -- | -- | (5.0) | -- | -- | -- | (5.0) | -- | -- | -- | ($30.0) |
| Management Fee | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Rent/Utilities | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Regulatory | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Cust Service | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Subcription | -- | -- | -- | -- | (0.5) | -- | -- | -- | -- | (0.5) | -- | -- | -- | (0.5) | -- | -- | -- | -- | (0.5) | -- | -- | -- | (1.0) | -- | ($3.0) |
| Equipment | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Total Operating Outflows** | -- | -- | -- | ($343.5) | ($700.5) | ($79.9) | ($1,423.4) | ($10,172.5) | ($0.0) | ($14.9) | ($673.3) | ($5.0) | ($15,755.5) | ($2.0) | ($734.4) | ($20.6) | ($15,576.1) | -- | ($655.3) | ($20.6) | ($15,253.3) | ($1.5) | ($654.3) | ($13.9) | ($62,100.6) |
| **Professional Fees [3]** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Debtor Counsel | -- | -- | -- | -- | -- | (75.0) | (50.0) | (50.0) | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (35.0) | (35.0) | (35.0) | (35.0) | (35.0) | (35.0) | (35.0) | ($600.0) |
| Debtor FA | -- | -- | -- | -- | -- | (100.0) | (30.0) | (30.0) | (15.0) | (15.0) | (15.0) | (15.0) | (15.0) | (15.0) | (15.0) | (15.0) | (15.0) | (26.3) | (26.3) | (26.3) | (26.3) | (26.3) | (26.3) | (26.3) | ($478.8) |
| UST Fees | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | (105.1) | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | (250.0) | ($355.1) |
| **Total Professional Fees** | -- | -- | -- | -- | -- | ($175.0) | ($80.0) | ($80.0) | ($35.0) | ($35.0) | ($140.1) | ($35.0) | ($35.0) | ($35.0) | ($35.0) | ($35.0) | ($35.0) | ($61.3) | ($61.3) | ($61.3) | ($61.3) | ($61.3) | ($61.3) | ($311.3) | ($1,433.9) |
| **Net Cash Flow** | -- | -- | -- | ($343.5) | ($700.5) | ($254.9) | ($1,503.4) | $3,371.0 | ($35.0) | ($49.9) | ($813.4) | ($40.0) | $1,822.1 | ($37.0) | ($769.4) | ($55.6) | $1,685.7 | ($61.3) | ($716.6) | ($81.9) | $1,640.8 | ($62.8) | ($715.6) | ($325.2) | $1,953.7 |
| Beginning Cash Balance | $11,063.7 | $11,063.7 | $11,063.7 | $11,063.7 | $10,720.3 | $10,019.8 | $9,764.9 | $8,261.5 | $11,632.5 | $11,597.5 | $11,547.6 | $10,734.1 | $10,694.1 | $12,516.2 | $12,479.2 | $11,709.7 | $11,654.1 | $13,339.8 | $13,278.6 | $12,562.0 | $12,480.2 | $14,121.0 | $14,058.2 | $13,342.7 | $11,063.7 |
| Net Cash Flow | -- | -- | -- | ($343.5) | ($700.5) | ($254.9) | ($1,503.4) | $3,371.0 | ($35.0) | ($49.9) | ($813.4) | ($40.0) | $1,822.1 | ($37.0) | ($769.4) | ($55.6) | $1,685.7 | ($61.3) | ($716.6) | ($81.9) | $1,640.8 | ($62.8) | ($715.6) | ($325.2) | $1,953.7 |
| **Ending Cash Balance** | $11,063.7 | $11,063.7 | $11,063.7 | $10,720.3 | $10,019.8 | $9,764.9 | $8,261.5 | $11,632.5 | $11,597.5 | $11,547.6 | $10,734.1 | $10,694.1 | $12,516.2 | $12,479.2 | $11,709.7 | $11,654.1 | $13,339.8 | $13,278.6 | $12,562.0 | $12,480.2 | $14,121.0 | $14,058.2 | $13,342.7 | $13,017.5 | $13,017.5 |

**Notes**
1. Pursuant to the Reseller Agreement with subsidiary Prepaid Wireless Wholesale, LLC, monthly inflows are a function of total outflows for the period prior to the respective inflow.
2. Forecasted T-Mobile costs are highly variable depending on the usage of data, text messaging, and voice usage. T-Mobile costs are also highly dependent on potential changes to the USF government program.
3. Professional fees will accrue weekly and be held in an escrow account until approved and released by the court pursuant to monthly and interim fee applications.