**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| Prepaid Wireless Group LLC, | Case No. 24-18852 |
| Debtor. | Hon. Maria Ellena Chavez-Ruark |

**T-MOBILE USA, INC.'S MOTION FOR ENTRY OF AN ORDER
AUTHORIZING REQUESTS FOR PRODUCTION,
THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS
AND THE PROVISION OF TESTIMONY PURSUANT TO
<u>RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

T-Mobile USA, Inc. ("T-Mobile") hereby moves this Court (the "Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order authorizing T-Mobile to issue document requests and subpoenas compelling the production of documents and the provision of testimony by Prepaid Wireless Group LLC (the "Debtor" or "PWG"), Paul Greene, Prepaid Wireless Wholesale, LLC ("PWW"), Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("SUW"), X Wireless, LLC ("X Wireless") and Q Link Wireless, LLC ("Q Link"). In support of the Motion, T-Mobile respectfully states as follows:

<u>**INTRODUCTION**</u>

1.      T-Mobile is the Debtor's sole secured creditor and has a lien on all of the Debtor's assets. T-Mobile is also by-far the Debtor's largest creditor, holding a claim significantly larger than the combined claims of all the Debtor's 20 largest unsecured creditors. Since the petition date, T-Mobile has been diligently evaluating the Debtor's bankruptcy filings as part of its assessment of the Debtor's overall reorganizational prospects, management competency and ability to operate as a going concern during the pendency of this case.

2.      Thus far during the pendency of this case, the Debtor has provided T-Mobile with limited financial data, which information is insufficient to understand and assess the Debtor's complicated finances and financial structure.  Indeed, the financial data raises far more questions than it answers regarding the interrelationships between the Debtor, its affiliates PWW, StandUp and X Wireless and its ownership.

3.      For instance, while the Debtor has represented to the Court that the Debtor's bankruptcy filing was solely due to its inability to pay T-Mobile's demand for additional security expressly provided under their contract, the Debtor's financial disclosures show that the Debtor has transferred tens of millions of dollars to its owners and its affiliates.  Such transfers include $17 million in transfers over the past year directly to its CEO, Paul Greene ("Greene")— including $10 million transferred on June 27, 2024 at a time when the Debtor was in arrears on its contract with T-Mobile.  They also show a $14.5 million transfer to an escrow account to fund the acquisition of equity of a Debtor an affiliate for Greene's benefit.

4.      In addition, T-Mobile is informed and believes that prepetition the Debtor and Greene may have acquired Q Link, an MVNO that partnered with T-Mobile to resell cellular services to consumers.  Greene's, the Debtor's, and Greene's attorneys have represented to T-Mobile that Greene now represents and speaks for Q Link.  However, to date, T-Mobile has not received official notification of Q Link's acquisition or assignment of its contract with T-Mobile, as required by Q Link's contract.  The Debtor has also thus far declined to answer whether or not it owns Q Link or has acquired Q Link's business.

5.      In addition, on November 25, 2024, counsel for T-Mobile attended the meeting of creditors under 11 U.S.C. § 341(a) but was unable to meaningfully examine the Debtor at that

time. The Section 341 examination did not provide answers to these critical questions concerning the Debtor's financial condition.

6.      T-Mobile is therefore seeking discovery into the Debtor's business practices and financials.  Specifically, T-Mobile is initially seeking information regarding: (a) the relationships, transfers and financial dealings between the Debtor and its affiliates, which include PWW, Global Connection Inc. of America, LLC d/b/a StandUp Wireless, X Wireless, LLC, and Q Link Wireless, LLC; (b) the relationship between the Debtor and its affiliates, on one side, and Q Link, on the other side, as well as the business dealings among them, including whether any such companies have acquired Q Link; and (c) whether Greene is engaging in conduct that is harmful to the interests of the Debtor's estate and its creditors, which information is critical to understanding the Debtor's prepetition conduct, its current financial position, its obligations owed to T-Mobile and the other creditors, and its ability to reorganize.

## JURISDICTION

7.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The predicate for the relief requested herein is Rule 2004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A.      T-Mobile

9.      T-Mobile, like AT&T and Verizon, is a mobile network operator ("MNO") that has invested billions of dollars into its mobile network to offer consumer cellular services nationwide.  T-Mobile enters partnerships with wholesale wireless providers known as mobile

virtual network operators ("MVNOs"), which allow MVNOs to use T-Mobile's mobile wireless

network infrastructure at wholesale prices.  The MVNOs can then offer cellular service to

consumers.  Instead of entering a partnership directly with T-Mobile, or another MNO, some

MVNOs contract with another intermediary, known as an aggregator, or a mobile virtual

network aggregator ("MVNA"), which does partner directly with T-Mobile or another MNO.

The MVNOs that partner with an aggregator tend to be smaller than MVNOs that directly

partner with T-Mobile or other MNOs.

**B.      The Debtor**

10.      The Debtor is an aggregator that has contracted with T-Mobile since January 3,

2012 for the use of T-Mobile's wireless network infrastructure, which the Debtor in turn sells to

MVNOs who then sell to retail customers in the United States.  T-Mobile and the Debtor have

amended the contract thirteen times, most recently on June 11, 2022 (as amended, the

"Agreement").  The Debtor contracts to provide wireless network capacity to more than 100

MVNOs.

**C.      T-Mobile's pre-petition interactions with the Debtor**

11.      T-Mobile has encouraged and facilitated the Debtor's growth and success.  For

more than twelve years, T-Mobile and the Debtor have been partners in the provision of wireless

network capacity to MVNOs.  When T-Mobile and Sprint merged, T-Mobile undertook the large

project of migrating the MVNOs operating on Sprint's network to T-Mobile's network.  As part

of that project, T-Mobile encouraged multiple of those Sprint MVNOs to work with the Debtor.

170227957.3

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

**D.     The Debtor's relationships with its affiliates**

13.     The Debtor and its subsidiary, PWW, appear to be embedded in a web of interrelated affiliates ultimately owned and controlled by Paul Greene.  As a result, the Debtor's financial affairs cannot be meaningfully considered in isolation, and its disclosures to date— which include only the Debtor and PWW—give an incomplete picture of the Debtor's financial condition because there has been no broader disclosure into its financial dealings with these affiliated entities.  Moreover, as discussed below, even the sworn disclosures that PWG has provided to this Court are inconsistent with the financial documentation that it previously disclosed to T-Mobile.  It is therefore essential to conduct a thorough review of (i) the financial relationship between the Debtor and PWW, and (ii) the financial relationship among the Debtor, PWW, and Greene's other affiliated entities so that T-Mobile can adequately assess whether assets nominally held by the Debtor's affiliates in fact should be viewed as part of Debtor's estate.  T-Mobile's requested Rule 2004 discovery will facilitate such a review.

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

170227957.3



15.    Second, discovery is warranted to explore whether certain of Greene's personal assets and those of the other companies that he owns and controls should be encompassed by or returned to the Debtor's estate.  The Debtor admits that Greene, "[as] CEO, monitors the [Cash Management System] Bank Accounts and manages the collection and disbursement of funds." ECF 3 at ¶ 13.  The limited Debtor financial information provided to date indicates that Greene has misused such control for his own benefit, both by directing payments to himself and by transferring cash to the Debtor's affiliates, thereby frustrating the ability of T-Mobile to collect on unpaid amounts owed to it.

170227957.3



*Fig 1*

18.     Similarly, PWW on September 11, 2024 transferred approximately ███████ to X Wireless, LLC, another company that Greene owns and controls.  This occurred just before an invoice for approximately ██████ was to come due to T-Mobile on September 14, 2024.

*Fig 2*

19.     In the Debtor's financial disclosures of November 21, 2024, the Debtor says it has "loaned" ██████ to X Wireless.  Dkt. 54 at 11.  While the Debtor identifies transfers to X Wireless made in 2023, it does not mention a transfer made in 2024.  Dtk. 55 at 21.  PWW unaudited statement of cash flows similarly disclose no loan to X Wireless during that time period.  Dkt. 56 at 11.  That cash flow statement discloses what appears to be over ██████ in intercompany transfers to PWG during 2024 but do not mention transfers to X Wireless.  Again,

170227957.3

these discrepancies raise serious questions as to the accuracy of the Debtor's financial disclosures.

20.    Third, discovery into the network of the Debtor's affiliates is warranted because the Debtor in its filings with this Court has failed to accurately describe its own business.  In the Debtor's Motion for Entry of an Order Approving its Cash Management System, the Debtor asserted that "PWW[] collects revenue from its customers into its operating account [], pays its vendors, funds payroll to ADP, and then transfers cash upstream on a monthly basis into the PWG Account in an amount sufficient to cover the invoiced costs of PWG's vendors and the T-Mobile contract." ECF 3 at ¶ 12.  Although it appears that PWW does collect revenue from its vendors, those funds have been transferred elsewhere, including to Greene and his other companies as described above.  Payments to T-Mobile, in turn, do not always flow from cash transferred from PWW into a Debtor upstream account.  Such payments instead may be sourced from Greene's other companies.



*Fig 3*

22.    On the same day, PWW received ▮▮▮▮▮▮ from SUW:

*Fig. 4*

*Fig. 5*

170227957.3



*Fig 6*

*Fig 7*

25.     The Debtor's representation to this Court in its Motion for Entry of an Order

Approving its Cash Management System that PWW "transfers cash upstream… in an amount

sufficient to cover" T-Mobile invoices is therefore false.  In reality, the amounts that have been

used to pay T-Mobile have come from many sources.  More troubling still, the latest financial

disclosures of November 21, 2024 appear to make no mention of these additional, inter-company

transfers.  The Debtors' schedule mentions a loan from an affiliate, Odin Mobile, LLC, but lists

the amount of such loan as "unknown."  Dkt. 54 at 18.  Even the amount purportedly owed by

PWG to its operating subsidiary is listed as "unknown."  *Id.*  The failure of the Debtor to

accurately and/or fully describe its own financial condition underscores the need for the

requested Rule 2004 discovery here.

**E.     Q Link's history and status, and its relationship with the Debtor**

26.     Q Link is an MVNO that partnered with T-Mobile to resell cellular services to

consumers.  Like the Debtor, Q Link has been a consistently tardy payer in recent years, and is

currently delinquent on several outstanding invoices to T-Mobile.  Now, it appears that the

Debtor, Paul Greene, and possibly other entities affiliated with Paul Greene are using Q Link in

170227957.3

ways that may prevent T-Mobile from recovering what it is owed from both Q Link and the Debtor.

27.     Q Link was partnered with Sprint prior to Sprint's merger with T-Mobile, but migrated to T-Mobile as part of the merger.  Q Link is primarily focused on the "Lifeline" business.  "Lifeline" is a program from the Federal Communications Commission ("FCC") that provides low-income subscribers a deep discount on qualifying monthly cellphone service.  Q Link has purchased wireless service from T-Mobile for resale since August 2020.

28.     T-Mobile is informed and believes that the Debtor and its CEO, Paul Greene, are interested in Q Link's business.  For the past few months, Greene's, the Debtor's, and Greene's attorneys have represented to T-Mobile that Greene now represents and speaks for Q Link.

29.     On or about October 2, 2024, Q Link customers received a message that "Q Link is now powered by StandUp Wireless [SUW]" (another company operated by Greene) and that Q Link customers are "free to choose [their] Lifeline provider anytime."

30.     However, to date, T-Mobile has not received any official notification of Q Link's acquisition or assignment of its contract with T-Mobile, as required by Q Link's contract.  The Debtor has also thus far declined to answer whether or not it owns Q Link or has acquired Q Link's business.  At no point has Q Link, the Debtor, SUW, or Greene sought T-Mobile's approval for any acquisition of Q Link—which violates § 13.9 (the "Assignment Provision") of the Q Link contract with T-Mobile.  Indeed, T-Mobile has observed numerous Q Link customers moving to the Debtor.

31.     On information and belief, and as suggested by an October 15, 2024 letter from the Debtor's non-bankruptcy counsel, David S. Sellman, Q Link/Asad and the Debtor/Greene have also likely exchanged competitively sensitive and confidential information regarding their

11

respective relationships with T-Mobile—which violates the confidentiality provisions of both Q

Link's and the Debtor's contracts with T-Mobile.





**F.     Greene's post-petition interactions with and regarding T-Mobile**

37.     On information and belief, post-petition, the Debtor sent a letter to its MVNO subscribers containing false and disparaging allegations about T-Mobile. A LinkedIn post by Allan T. Rasmussen, Managing Director of YOZZO, a Technology, Media, and Telecom consulting company, stated that certain of its clients and partners "received a letter, apparently from PWG Network Solutions," regarding T-Mobile. The letter reportedly stated that T-Mobile had engaged in "predatory practices," and that the Debtor had recently completed "the Q Link acquisition." Despite two separate requests by T-Mobile, the Debtor's counsel has, to date, refused to confirm whether this letter was sent or provide a copy despite several requests from T-Mobile for production of the same.

38.     On November 5, 2024, Greene sent an expletive laden email to T-Mobile's bankruptcy counsel of record, David Gold, Esq., and other third parties containing a variety of threats and asserting that Greene had recorded a T-Mobile executive's phone conversation without that executive's knowledge. While generally incoherent, the email appeared to again assert that the Debtor has acquired Q Link.

39.     Greene's post-petition conduct is concerning and may be harmful to the interests of the Debtor's estate and its creditors, and the Debtor's ability to continue operating as a going concern during the pendency of this bankruptcy case.

## RELIEF REQUESTED

40.     Pursuant to Rule 2004, T-Mobile seeks entry of an order of the Court authorizing T-Mobile to issue Rule 2004 document requests and subpoenas (the "Discovery Requests") pursuant to Bankruptcy Rules 2004 and 9016 containing riders substantially in the form annexed hereto as Exhibit A,[1] compelling the Debtor, Paul Greene, Prepaid Wireless Wholesale, LLC, Global Connection Inc. of America, LLC d/b/a StandUp Wireless, X Wireless, LLC and Q Link Wireless, LLC to produce documents and provide testimony.  Copies of the Discovery Requests are attached hereto as Exhibits B-G.

## ARGUMENT AND APPLICABLE AUTHORITY

41.     Rule 2004(a) provides, that "[o]n motion of any party in interest, the court may order the examination of any entity."  Further, Rule 2004 permits a bankruptcy court to order the examination of any person and the production of documentary evidence relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  Fed. R. Bank. P. 2004(b),(c).  T-Mobile, as the estate's largest creditor, is a party in interest able to request such discovery.

42.     Rule 2004 "necessarily permits a broad investigation into the financial affairs of debtors to assure the proper administration of bankruptcy estates."  *In re Symington*, 209 B.R. 678, 682-84 (Bankr. D. Md. 1997); *see also In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D.

---

[1] T-Mobile reserves the right to request additional document production prior to issuing its document requests and subpoenas.

170227957.3

Mass. 1985) (scope of a 2004 examination is "unfettered and broad"); *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983) (2004 examination is allowed for the "purpose of discovering assets and unearthing frauds" and "to a considerable extent [may be] a fishing expedition"); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (inquiry into any matter that may affect administration of estate "comfortably falls within the allowed limits under Rule 2004"); *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville)*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (2004 examination may "cut a broad swath through the Debtor's affairs").  Such broad power furthers the general purpose of Rule 2004, which is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (internal citation omitted); *see also In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors").

43.     Further, by its terms, Rule 2004 contemplates examination not just of the Debtor, but of non-debtor parties as well.  *See* Fed. R. Bankr. P. 2004(a) and (c) ("On motion of any party in interest, the court may order the examination of any entity" and compel such witness's attendance through a subpoena.  Generally, a third party may be examined under Rule 2004 if he or she possesses knowledge of a debtor's acts and conduct of financial affairs so far as these relate to a debtor's proceeding in bankruptcy, and has or had a relationship (including, for example, business dealings) with a debtor.  *See*, *e.g.*, *In re Symington*, 209 B.R. at 90 (granting motion to examine third party who had knowledge of the debtor's financial transactions); *In re Valley Forge Plaza Asso*c., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (examination allowed

where the third party has "knowledge of the debtor's affairs"). A bankruptcy court has the discretion to authorize the requested discovery. *See, e.g.*, *In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992).

44.    Courts have acknowledged that Rule 2004 allows for a "fishing expedition" not limited to a debtor's agents but extending to creditors and third parties who have had dealings with a debtor, without the limits as to scope placed upon examinations under the Federal Rules of Civil Procedure. *See In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985); *see also In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) ("Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, Rule 2004 has been rightly characterized as a 'fishing expedition.' It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate.").

45.    The relief requested by this Motion is well within the scope of Rule 2004 and well within the Court's discretion to grant it. It is crucial for T-Mobile, as the Debtor's largest creditor and only secured creditor, to investigate and reach conclusions about the Debtor's financial structure, history and plans so that it may properly evaluate the Debtor's pre-petition actions and ability to reorganize.

## NO PRIOR REQUEST

46.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, T-Mobile respectfully requests that this Court enter an order, substantially in the form attached as Exhibit A hereto, granting the relief requested therein, and such other and further relief as this Court deems appropriate.

170227957.3

Dated: December 5, 2024                    Respectfully submitted,


                                           /s/      *David Daniels*
                                           David Daniels
                                           Perkins Coie LLP
                                           700 13th Street, NW, Suite 600
                                           Washington, DC 20005

                                           David Gold (*admitted pro hac vice*)
                                           Perkins Coie LLP
                                           110 North Wacker Drive, Suite 3400
                                           Chicago, IL 60606-1511

                                           *Attorneys for T-Mobile USA, Inc.*

170227957.3

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, a copy of the redacted *T-Mobile USA, Inc.'s*

*Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas*

*for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the*

*Federal Rules of Bankruptcy Procedure* was served electronically by the Court's CM/ECF

system on the following:

Harry Conrad Jones, III
Irving Edward Walker
Cole Schotz P.C.
1201 Wills Street
Suite 320
Baltimore, MD 21231
Email: HJones@coleschotz.com
iwalker@coleschotz.com
*Counsel for Debtor*

Lynn A. Kohen
U.S. Trustee Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770
Email: lynn.a.kohen@usdoj.gov
ustpregion04.gb.ecf@usdoj.gov
*Trustee*

*/s/ David Daniels*
David Daniels

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| Prepaid Wireless Group LLC, | Case No. 24-18852 |
| Debtor. | Hon. Maria Ellena Chavez-Ruark |

**ORDER GRANTING T-MOBILE USA, INC.'S MOTION FOR ENTRY**
**OF AN ORDER AUTHORIZING REQUESTS FOR PRODUCTION, THE ISSUANCE**
**OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE**
**PROVISION OF TESTIMONY PURSUANT TO RULE 2004 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The relief set forth herein is hereby **ORDERED**.

This matter came before the Court on *T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "Motion") filed by T-Mobile USA, Inc. ("T-Mobile").  The Court has reviewed the Motion and finds that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue of this chapter 11 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and (d) notice of the Motion was sufficient under the circumstances.  The Court having determined that the legal and factual bases set forth in the Motion establish cause for the relief granted herein, and it appearing that the relief requested is in the best interests of the Debtor's estate and creditors, and other parties in interest;

170227957.3

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein;

2.      Pursuant to Bankruptcy Rule 2004, T-Mobile is authorized to serve the document requests, deposition notices and subpoenas compelling the production of documents and the provision of testimony (the "Requests") upon the Debtor, Prepaid Wireless Group LLC (the "Debtor"), Paul Greene, Prepaid Wireless Wholesale, LLC, Global Connection Inc. of America, LLC d/b/a StandUp Wireless, X Wireless, LLC and Q Link Wireless, LLC (the "Respondents"), copies of which are attached hereto as Exhibits B-G;

3.      T-Mobile is authorized to serve additional document requests to the Respondents consistent with the scope of the requests attached as Exhibits B-G.

4.      The Respondents shall produce all responsive non-privileged documents on a rolling basis and in the matter instructed in respective Requests.  Any allegations of privilege must be supported by a privilege log within the time specified;

5.      Green and the other Respondents (through designees pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure), shall appear for an oral examination at a deposition no later than 30 days after receiving a subpoena or notice of deposition, as applicable, unless otherwise agreed to by T-Mobile or ordered by the Court;

6.      In the event of a discovery dispute relating to the Requests, counsel shall comply with the Court's Discovery Guidelines provided in the Local Rules; and

7.      The Court shall retain jurisdiction to resolve any disputes arising from or relating to this Order and to interpret, implement, and enforce the provisions of this Order.

170227957.3

Exhibit B

**EXHIBIT B**

**ATTACHMENT TO PROPOSED SUBPOENA TO PREPAID WIRELESS GROUP, LLC**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

### DEFINITIONS

1.      "**You**," and/or "**Your**," means Prepaid Wireless Group, LLC ("PWG"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries (including Prepaid Wireless Wholesale, LLC, "PWW"), parent corporations, predecessors and successors in interest, and any past or present officers (such as Mr. Paul Greene), directors, trustees, agents, employees, servants, consultants, representatives, attorneys, investigators, or entities who are in possession of or may have obtained information for or on behalf of PWG, or who are acting or purporting to act on behalf of PWG.

2.      "**This case**" or "**this action**" refer to the above captioned case in which You filed for Chapter 11 bankruptcy.

3.      "**Confidential Information**" shall have the same meaning as defined in the Wholesale Supply Agreement ("WSA," defined *infra*) between T-Mobile and PWG.

4.      "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face to face, by telephone, electronic delivery (including electronic mail and text messages), mail, facsimile or personal delivery, etc.

5.      "**Document**" or "**documents**" is used in the broadest possible sense and means, without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6.      "**Monitoring Trustee**" means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

7.      "**MVNO**" or "**Mobile Virtual Network Operator**" shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

8.      "**Person**" means a natural person and, without limitation, firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, public entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any

other type of legal entity.

9.      "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

10.     "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

11.     The "**Wholesale Supply Agreement**," or "**WSA**," shall refer to the contract in place between T-Mobile, PWG, and PWW for the provision of wireless communications service. For the avoidance of doubt, this contract was originally entered into between T-Mobile and "Cintex Wireless, LLC" on January 23, 2012, was assigned to PWG on September 11, 2013, and has been amended thirteen (13) times, most recently on June 11, 2022.

12.     The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

13.     The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is

not distorted by change of tense.

## **INSTRUCTIONS**

1.      Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.      These discovery requests are to be answered separately and fully, in writing and under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and respond to the remainder.

7.      If You deem any discovery request to call for privileged information or documents, and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

      a.   Description of allegedly privileged communication or document withheld;

      b.   Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

      c.   Date of allegedly privileged communication or document withheld;

      d.   Subject matter of allegedly privileged communication or document withheld;

      e.   Type of document withheld (e.g., letter, memorandum or computer database);

      f.   Nature of privilege(s) claimed; and

      g.   The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.      These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## DOCUMENT REQUESTS

1.      Your operating agreement, LLC agreement, and/or shareholder agreement, including any side-letters thereto, and any other agreement memorializing or reflecting ownership or control of You.

2.      Your financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.

3.      Your general ledger.

4.      Any bank statements for any account that is subject to a Cash Management Order.

5.      Your federal and state tax returns.

6.      All K-1s for any of Your owners or members.

7.      Documents and communications sufficient to show the identity of any auditor of Your financial statements.

8.      Any organization chart for You and Your affiliates, including but not limited to Prepaid Wireless Wholesale, LLC ("PWW"), Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), X Wireless, LLC ("X Wireless"), Odin Mobile, LLC ("Odin Mobile"), and/or Q Link Wireless, LLC ("Q Link").

9.      Any agreements between or among You, PWW, StandUp Wireless, X Wireless, Odin Mobile, Q Link, and/or any entity directly or indirect owned in whole or in part by Paul Greene.

10.     With respect to any service provided by T-Mobile, all agreements with any end user, third party reseller, subscriber or MVNO.

11.     All documents and communications regarding the creation of PWW.

12.     All documents and communications regarding the transfer of any assets or contractual relationships from PWW to You, or from You to PWW.

13.     All documents and communications regarding intracompany payments or loans between You and PWW, including without limitation documents and communications regarding PWW compensation of Your employees, as represented to the Court on November 7, 2024.

14.     All documents and communications relating to payments or transfers of funds or

other assets between You and PWW, on the one hand, and, on the other hand, StandUp Wireless, X Wireless, Q Link, Odin Mobile, Paul Greene, and/or any entity that Mr. Paul Greene directly or indirectly owns or controls.

15.     All documents and communications regarding any distributions or transfers by You or PWW to any of Your direct or indirect owners, including Paul Greene.

16.     All documents and communications regarding any acquisition of equity in Stand Up Wireless by GFH1, LLC or Paul Greene.

17.     All documents and communications regarding any compensation paid by You or PWW to Paul Greene.

18.     Documents and communications sufficient to show any commissions paid to employees, agents, partners, or other persons or entities.

19.     All documents and communications regarding any payments made for any vehicle used by Paul Greene.

20.     All documents and communications with or regarding Q Link, its agent(s), and/or representative(s) regarding any actual, contemplated, or proposed merger, acquisition, joint venture, transaction, or other agreement.

21.     All agreements between You and Paul Greene.

22.     All documents and communications that refer or relate to the allegations in Paragraph 10 of Your motion for approval of the use of cash collateral (Dkt. 3), including, but not limited to, support for Your claim that T-Mobile's demand for additional security was

"unjustified." For the avoidance of doubt, this request includes communications with any third parties regarding these claims.

23.     All documents and communications relating to any T-Mobile invoice or payment under the WSA.

24.     All audio and video recordings of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

25.     All documents and communications regarding the audio or video recording of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

26.     Documents and communications sufficient to show any investigations of You by any governmental body or agency.

27.     All documents and communications regarding Your communications with any governmental body or agency as to Your financial position, Q Link, or any allegation that T-Mobile adversely impacted Your financial position.

28.     All communications with Dundon Advisers, LLC.

29.     All documents provided to the Office of the United States Trustee in this matter.

Dated:  Washington, D.C.
  November ___, 2024

/s/     DRAFT                
David Daniels
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005

David Gold (*admitted pro hac vice*)
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511

*Attorneys for T-Mobile*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

Document Title(s)

*Service List*

☐    United States Mail, First Class
☐    By Messenger
☐    By Facsimile
☐    By E-Mail

Dated at _____ [city/state], this _____ day of _____, 2024.


_____
Signer Name

Exhibit C

**EXHIBIT C**

**ATTACHMENT TO PROPOSED SUBPOENA TO PREPAID WIRELESS**

**WHOLESALE, LLC**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

**DEFINITIONS**

1.      "**You**," and/or "**Your**," means Prepaid Wireless Wholesale, LLC ("PWW"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries, parent corporations (including Prepaid Wireless Group, LLC, "PWG"), predecessors and successors in interest, and any past or present officers (such as Mr. Paul Greene), directors, trustees, agents, employees, servants, consultants, representatives, attorneys, investigators, or entities who are in possession of or may have obtained information for or on behalf of PWW, or who are acting or purporting to act on behalf of PWW.

2.      "**This case**" or "**this action**" refer to the above captioned case in which PWG filed for Chapter 11 bankruptcy.

3.      "**Confidential Information**" shall have the same meaning as defined in the Wholesale Supply Agreement ("WSA," defined *infra*) between T-Mobile and PWG.

4.      "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face to face, by telephone, electronic delivery (including electronic mail and

text messages), mail, facsimile or personal delivery, etc.

5.      "**Document**" or "**documents**" is used in the broadest possible sense and means, without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6.      "**Monitoring Trustee**" means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

7.      "**MVNO**" or "**Mobile Virtual Network Operator**" shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

8.      "**Person**" means a natural person and, without limitation, firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, public

entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any other type of legal entity.

9.      "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

10.     "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

11.     The "**Wholesale Supply Agreement**," or "**WSA**," shall refer to the contract in place between T-Mobile, PWG, and PWW for the provision of wireless communications service. For the avoidance of doubt, this contract was originally entered into between T-Mobile and "Cintex Wireless, LLC" on January 23, 2012, was assigned to PWG on September 11, 2013, and has been amended thirteen (13) times, most recently on June 11, 2022.

12.     The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

13.     The singular includes the plural and vice versa. The masculine includes the

feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## **INSTRUCTIONS**

1.      Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.      These discovery requests are to be answered separately and fully, in writing and under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and

respond to the remainder.

7.    If You deem any discovery request to call for privileged information or documents, and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

    a.  Description of allegedly privileged communication or document withheld;

    b.  Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

    c.  Date of allegedly privileged communication or document withheld;

    d.  Subject matter of allegedly privileged communication or document withheld;

    e.  Type of document withheld (e.g., letter, memorandum or computer database);

    f.  Nature of privilege(s) claimed; and

    g.  The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.    These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## DOCUMENT REQUESTS

1.    Any organization chart for You and Your affiliates, including but not limited to PWG, Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), X Wireless, LLC ("X Wireless"), Odin Mobile, LLC ("Odin Mobile"), and/or Q Link Wireless, LLC ("Q Link") as they relate to You.

2.    Documents and communications sufficient to show the identity, and each role and affiliation, of all employees and/or contractors who are employed in common by You and one or

-5-

more of PWG, StandUp Wireless, X Wireless, Odin Mobile, and/or Q Link.

3.      All documents and communications relating to payments or transfers of funds or other assets between You and PWG, on the one hand, and, on the other hand, StandUp Wireless, X Wireless, Odin Mobile, Q Link, Mr. Paul Greene, and/or any entity that Mr. Paul Greene directly or indirectly owns or controls.

4.      All documents and communications regarding the transfer of any assets or contractual relationships from PWG to You, or from You to PWG.

5.      Any intercompany loan agreements between PWW and PWG.

6.      All documents and communications regarding any distributions or transfers by You or PWG to any of Your direct or indirect owners, including Paul Greene.

7.      All documents and communications regarding any acquisition of equity in StandUp Wireless by GFH1, LLC or Paul Greene.

8.      All documents and communications regarding any compensation paid by You or PWG to Paul Greene

9.      Documents and communications sufficient to show any commissions paid to employees, agents, partners, or other persons or entities.

10.     All documents and communications regarding any payments made for any vehicle used by Paul Greene.

11.     All agreements between You and Paul Greene.

12.     All documents and communications regarding intracompany payments between PWG and You, including without limitation documents and communications regarding Your compensation of PWG employees, as represented to the Court on November 7, 2024.

13.     Your financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.

14.     Your general ledger.

15.     Any bank statements for any account that is subject to a Cash Management Order.

16.     Your federal and state tax returns.

17.     All K-1s for any of Your owners or members.

18.     Documents and communications sufficient to show the identity of any auditor of Your financial statements.

19.     Documents and communications sufficient to show all Your agreements with Subscribers, customers, and/or corporate affiliates that refer to and/or include as a party PWG, StandUp Wireless, X Wireless, and/or Q Link.

20.     Your operating agreement, LLC agreement, and/or shareholder agreement, including any side-letters thereto, and any other agreement memorializing or reflecting ownership or control of You.

21.     Any agreements between or among You, PWG, StandUp Wireless, X Wireless, Odin Mobile, Q Link, and/or any entity directly or indirectly owned in whole or in part by Paul Greene.

22.     With respect to any service provided by T-Mobile, all agreements with any end user, third party reseller, Subscriber, or MVNO.

23.     All documents and communications relating to any T-Mobile invoice or payment under the WSA.

24.     All documents and communications regarding the creation of PWW.

25.     All documents and communications with or regarding Q Link, its agent(s), and/or representative(s) regarding any actual, contemplated, or proposed merger, acquisition, joint venture, transaction, or other agreement.

26.     All audio and video recordings of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

27.     All documents and communications regarding the audio or video recording of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

28.     Documents and communications sufficient to show any investigations of You by any governmental body or agency.

29.     All documents and communications regarding Your communications with any governmental body or agency as to Your financial position, Q Link, or any allegation that T-Mobile adversely impacted Your financial position.

30.     All communications with Dundon Advisers, LLC.

31.     All documents provided to the Office of the United States Trustee in this matter.

Dated:  Washington, D.C.
  November ___, 2024

/s/      DRAFT                  
David Daniels
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005

David Gold (*admitted pro hac vice*)
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511

*Attorneys for T-Mobile USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

Document Title(s)

*ServiceList*

☐    United States Mail, First Class
☐    By Messenger
☐    By Facsimile
☐    By E-Mail

Dated at _____ [city/state], this ____ day of _____, 2024.

_____
Signer Name

# Exhibit D

**EXHIBIT D**

**ATTACHMENT TO PROPOSED SUBPOENA TO PAUL GREENE**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

**DEFINITIONS**

1.    "**You**," and/or "**Your**," means the individual Mr. Paul Greene, including any agents, representatives, employees, attorneys, or any other persons or entities acting or purporting to act on Mr. Greene's behalf, as well as any entities in which Mr. Greene has a controlling interest or exercises control, directly or indirectly.

2.    "**This case**" or "**this action**" refers to the captioned case on the form accompanying this attachment in which Prepaid Wireless Group, LLC ("PWG")[1] filed for Chapter 11 bankruptcy.

3.    "**Confidential Information**" shall have the same meaning as defined in the Wholesale Supply Agreement ("WSA," defined *infra*) between T-Mobile and PWG.

4.    "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face to face, by telephone, electronic delivery (including electronic mail and text messages), mail, facsimile or personal delivery, etc.

5.    "**Document**" or "**documents**" is used in the broadest possible sense and means,

---

[1]For the avoidance of doubt, in these Requests "Prepaid Wireless Group, LLC" or "PWG" shall also encompass any subsidiaries or affiliates of PWG, including Prepaid Wireless Wholesale, LLC ("PWW").

without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6. **"Monitoring Trustee"** means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

7. **"MVNO"** or **"Mobile Virtual Network Operator"** shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

8. **"Person"** means a natural person and, without limitation, firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, public entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any other type of legal entity.

9.      "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

10.      "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

11.      The "**Wholesale Supply Agreement**," or "**WSA**," shall refer to the contract in place between T-Mobile, PWG, and PWW for the provision of wireless communications service. For the avoidance of doubt, this contract was originally entered into between T-Mobile and "Cintex Wireless, LLC" on January 23, 2012, was assigned to PWG on September 11, 2013, and has been amended thirteen (13) times, most recently on June 11, 2022.

12.      The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

13.      The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## **INSTRUCTIONS**

1.      Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.      These discovery requests are to be answered separately and fully, in writing and under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and respond to the remainder.

7.      If You deem any discovery request to call for privileged information or documents,

and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

    a.   Description of allegedly privileged communication or document withheld;

    b.   Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

    c.   Date of allegedly privileged communication or document withheld;

    d.   Subject matter of allegedly privileged communication or document withheld;

    e.   Type of document withheld (e.g., letter, memorandum or computer database);

    f.   Nature of privilege(s) claimed; and

    g.   The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.    These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## DOCUMENT REQUESTS

1.    Documents and communications sufficient to show Your employment by, ownership of, and/or affiliation with PWG, Prepaid Wireless Wholesale, LLC ("PWW") Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), X Wireless, LLC ("X Wireless"), Odin Mobile, LLC ("Odin Mobile"), and/or Q Link Wireless, LLC ("Q Link").

2.    All documents and communications relating to payments or transfers of funds or other assets between You and PWG, PWW, StandUp Wireless, X Wireless, Odin Mobile, and/or Q Link.

3.    All documents and communications relating to any purchase of stock in StandUp

Wireless.

4.      Documents and communications sufficient to show any employment compensation, and its purpose, You received from PWG, PWW, StandUp Wireless, X Wireless, Odin Mobile, and/or Q Link.

5.      All documents and communications with or regarding Q Link, its agent(s), and/or representative(s) regarding any actual, contemplated, or proposed merger, acquisition, joint venture, transaction, or other agreement.

6.      All audio and video recordings of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

7.      All documents and communications regarding the audio or video recording of any telephone call, video conference call, or any other conversation between You and any representative of T-Mobile.

8.      Documents and communications sufficient to show any investigations of You by any governmental body or agency.

9.      All documents and communications that have passed between You and any governmental body or agency related to Q Link.

Dated:  Washington, D.C.
  November \_\_\_, 2024

/s/     DRAFT_____
David Daniels
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005

David Gold (*admitted pro hac vice*)
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511

*Attorneys for T-Mobile*


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

     Document Title(s)

     *Service List*


☐    United States Mail, First Class

☐    By Messenger

☐    By Facsimile

☐    By E-Mail


Dated at _____ [city/state], this \_\_\_\_ day of _____, 2024.


_____
               Signer Name

Exhibit E

**EXHIBIT E**

**ATTACHMENT TO PROPOSED SUBPOENA TO Q LINK WIRELESS**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

## DEFINITIONS

1.      "**You**," and/or "**Your**," means Q Link Wireless, LLC ("Q Link"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors and successors in interest, and any past or present officers, directors, trustees, agents, employees, servants, consultants, representatives, attorneys, investigators, or entities who are in possession of or may have obtained information for or on behalf of Q Link, or who are acting or purporting to act on behalf of Q Link.

2.      "**This case**" or "**this action**" refers to the captioned case on the form accompanying this attachment in which Prepaid Wireless Group, LLC ("PWG")[1] filed for Chapter 11 bankruptcy.

3.      "**Confidential Information**" shall have the same meaning as defined in the Wireless Wholesale Master Services Agreement ("MSA," defined *infra*) between T-Mobile and Q Link.

4.      "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by

---

[1] For the avoidance of doubt, in these Requests "Prepaid Wireless Group, LLC" or "PWG" shall also encompass any subsidiaries or affiliates of PWG, including Prepaid Wireless Wholesale, LLC ("PWW").

document, or whether face to face, by telephone, electronic delivery (including electronic mail and text messages), mail, facsimile or personal delivery, etc.

5.     "**Document**" or "**documents**" is used in the broadest possible sense and means, without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6.     "**Monitoring Trustee**" means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

7.     "**MVNO**" or "**Mobile Virtual Network Operator**" shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

8.     "**Person**" means a natural person and, without limitation, firms, partnerships,

corporations, associations, unincorporated associations, organizations, businesses, trusts, public entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any other type of legal entity.

9.     "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

10.     "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

11.     The "**Wireless Wholesale Master Services Agreement**," or "**MSA**," shall refer to the contract in place between T-Mobile and Q Link for the provision of wireless communications service. For the avoidance of doubt, this contract was originally entered into between T-Mobile and Q Link on August 24, 2020, and has been amended one time, on July 6, 2022.

12.     The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

13.     The singular includes the plural and vice versa. The masculine includes the

feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## **INSTRUCTIONS**

1.      Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.      These discovery requests are to be answered separately and fully, in writing and under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and

-4-

respond to the remainder.

7.      If You deem any discovery request to call for privileged information or documents, and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

    a.   Description of allegedly privileged communication or document withheld;

    b.   Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

    c.   Date of allegedly privileged communication or document withheld;

    d.   Subject matter of allegedly privileged communication or document withheld;

    e.   Type of document withheld (e.g., letter, memorandum or computer database);

    f.   Nature of privilege(s) claimed; and

    g.   The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.      These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## DOCUMENT REQUESTS

1.      An organization chart showing Your current corporate structure and/or corporate affiliations.

2.      Any operating agreement, shareholder agreement, or similar agreement reflecting or memorializing Your ownership structure.

3.      Documents and communications sufficient to show the identity, and each role and affiliation, of all employees and/or contractors who are employed in common by You and one or

more of PWG, PWW, Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), Odin Mobile, LLC ("Odin Mobile"), and/or X Wireless, LLC ("X Wireless").

4.    Documents and communications sufficient to show all payments or transfers of funds or other assets, and their purpose, between You and Paul Greene, and/or any entities that he is affiliated with, including PWG, PWW, StandUp Wireless, Odin Mobile, and X Wireless.

5.    Any actual or proposed agreement between You and Paul Greene.

6.    All documents and communications concerning any actual or proposed agreement between You and Paul Greene and/or any entity under his control, including PWG, PWW, StandUp Wireless, Odin Mobile and X Wireless.

7.    Your financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.

8.    Documents and communications sufficient to show all Your agreements with Subscribers, customers, and/or corporate affiliates that refer to and/or include as a party PWG, PWW, StandUp Wireless, Odin Mobile, and/or X Wireless.

9.    All documents and communications regarding attempts to acquire You, and/or Your assets, and/or Your Subscribers, by PWG, PWW, StandUp Wireless, X Wireless, Odin Mobile, Paul Greene, and/or any entities that Mr. Paul Greene is in any way affiliated with.

Dated:  Washington, D.C.
  November ___, 2024

/s/     DRAFT                       
David Daniels
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005

David Gold (*admitted pro hac vice*)
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511

*Attorneys for T-Mobile*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

Document Title(s)

*Service List*

☐    United States Mail, First Class
☐    By Messenger
☐    By Facsimile
☐    By E-Mail

Dated at _____ [city/state], this ____ day of _____, 2024.


_____
                                Signer Name

Exhibit F

**EXHIBIT F**

**ATTACHMENT TO PROPOSED SUBPOENA TO X WIRELESS**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

**DEFINITIONS**

1.       "**You**," and/or "**Your**," means X Wireless, LLC ("X Wireless"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors and successors in interest, and any past or present officers, directors, trustees, agents, employees, servants, consultants, representatives, attorneys, investigators, or entities who are in possession of or may have obtained information for or on behalf of X Wireless, or who are acting or purporting to act on behalf of X Wireless.

2.       "**This case**" or "**this action**" refers to the captioned case on the form accompanying this attachment in which Prepaid Wireless Group, LLC ("PWG")[1] filed for Chapter 11 bankruptcy.

3.       "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face to face, by telephone, electronic delivery (including electronic mail and text messages), mail, facsimile or personal delivery, etc.

4.       "**Document**" or "**documents**" is used in the broadest possible sense and means,

---

[1] For the avoidance of doubt, in these Requests "Prepaid Wireless Group, LLC" or "PWG" shall also encompass any subsidiaries or affiliates of PWG, including Prepaid Wireless Wholesale, LLC ("PWW").

without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

5.      "**Monitoring Trustee**" means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

6.      "**MVNO**" or "**Mobile Virtual Network Operator**" shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

7.      "**Person**" means a natural person and, without limitation, firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, public entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any other type of legal entity.

8.      "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

9.      "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

10.      The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

11.      The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## INSTRUCTIONS

1.      Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.      These discovery requests are to be answered separately and fully, in writing and under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and respond to the remainder.

7.      If You deem any discovery request to call for privileged information or documents, and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

     a.   Description of allegedly privileged communication or document withheld;

     b.   Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

    c.   Date of allegedly privileged communication or document withheld;

    d.   Subject matter of allegedly privileged communication or document withheld;

    e.   Type of document withheld (e.g., letter, memorandum or computer database);

    f.   Nature of privilege(s) claimed; and

    g.   The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.    These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## <u>DOCUMENT REQUESTS</u>

1.    An organization chart showing Your current corporate structure and/or corporate affiliations.

2.    Any operating agreement, shareholder agreement, or similar agreement reflecting or memorializing Your ownership structure.

3.    Documents and communications sufficient to show the identity, and each role and affiliation, of all employees and/or contractors who are employed in common by You and one or more of PWG, PWW, Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), Odin Mobile, LLC ("Odin Mobile"), and Q Link Wireless, LLC ("Q Link").

4.    All documents and communications relating to payments or transfers of funds or other assets between You and Paul Greene, and/or any entities that he is affiliated with, including PWG, PWW, StandUp Wireless, and Q Link.

5.    All documents and communications relating to any loan between You and PWG

and/or PWW.

6.      Any actual or proposed agreement between You and Paul Greene.

7.      All documents and communications concerning any actual or proposed agreement between You and Paul Greene and/or any entity under his control, including PWG, PWW, StandUp Wireless, Odin Mobile, and Q Link.

8.      Your financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.

9.      Documents and communications sufficient to show all Your agreements with Subscribers, customers, and/or corporate affiliates that refer to and/or include as a party PWG, PWW, StandUp Wireless, Odin Mobile, and/or X Wireless.

Dated:  Washington, D.C.             /s/     DRAFT
 November ___, 2024             David Daniels
                                    Perkins Coie LLP
                                    700 13th Street, NW, Suite 600
                                    Washington, DC 20005

                                    David Gold (*admitted pro hac vice*)
                                    Perkins Coie LLP
                                    110 North Wacker Drive, Suite 3400
                                    Chicago, IL 60606-1511

                                    *Attorneys for T-Mobile*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

Document Title(s)

*Service List*

☐    United States Mail, First Class
☐    By Messenger
☐    By Facsimile
☐    By E-Mail

Dated at _____ [city/state], this _____ day of _____, 2024.

_____
Signer Name

Exhibit G

**EXHIBIT G**

**ATTACHMENT TO PROPOSED SUBPOENA TO STANDUP WIRELESS**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, T-Mobile USA, Inc. ("T-Mobile") hereby requests that You (as defined below) serve full and complete responses to the following requests for the production of documents and produce responsive documents within twenty-one (21) days after service of these requests.

## DEFINITIONS

1.      "**You**," and/or "**Your**," means Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("StandUp Wireless"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors and successors in interest, and any past or present officers, directors, trustees, agents, employees, servants, consultants, representatives, attorneys, investigators, or entities who are in possession of or may have obtained information for or on behalf of StandUp Wireless, or who are acting or purporting to act on behalf of StandUp Wireless.

2.      "**This case**" or "**this action**" refers to the captioned case on the form accompanying this attachment in which Prepaid Wireless Group, LLC ("PWG")[1] filed for Chapter 11 bankruptcy.

3.      "**Communicate**" or "**communication**" shall mean any manner of disclosure, transfer, exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face to face, by telephone, electronic delivery (including electronic mail and text messages), mail, facsimile or personal delivery, etc.

---

[1] For the avoidance of doubt, in these Requests "Prepaid Wireless Group, LLC" or "PWG" shall also encompass any subsidiaries or affiliates of PWG, including Prepaid Wireless Wholesale, LLC ("PWW").

4.      "**Document**" or "**documents**" is used in the broadest possible sense and means, without limitation, all tangible preservations of information, including writings, recordings, and photographs, along with all documents or electronically stored information, information preserved on computers, electronic databases, servers, tablets, phones, or other devices, and any non-identical copies (whether different from the originals because of notes made on such copies, because such copies were sent to different individuals, or for any other reason) and drafts. The term "document" includes, without limitation, any communications, which shall be interpreted in the broadest manner possible, and shall mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

5.      "**Monitoring Trustee**" means Theodore W. Ullyot, including all individuals acting on his behalf, who was appointed as the trustee overseeing the Department of Justice's (DOJ) settlement with T-Mobile related to their acquisition of Sprint Corporation.

6.      "**MVNO**" or "**Mobile Virtual Network Operator**" shall mean a telecommunications service provider that offers mobile communication services to customers but does not own the wireless network infrastructure over which these services are provided. Instead, the MVNO enters into a business agreement with a Mobile Network Operator (MNO), such as T-Mobile, to obtain access to network services at wholesale rates. The MVNO then resells these services to its own customers under its own brand. MVNOs can also contract with Mobile Virtual Network Aggregators (MVNAs), such as PWG, to obtain access to network services.

7.      "**Person**" means a natural person and, without limitation, firms, partnerships, corporations, associations, unincorporated associations, organizations, businesses, trusts, public entities, parent companies, subsidiaries, divisions, departments or other units thereof, and/or any

other type of legal entity.

8.    "**Regarding**" is to be construed broadly and includes anything in connection with, constituting, concerning, reflecting, referring to, discussing, describing, identifying, stating, quoting, incorporating, attaching, analyzing, or otherwise relating in any way to the topic identified in the discovery request.

9.    "**Subscribers**" shall mean an individual or entity that has entered into an agreement with an MVNO to receive mobile telecommunications services. This includes any person or organization that has activated a mobile device on an MVNO's network, is assigned a unique subscriber identity module (SIM) card, and is billed for the services provided by an MVNO. The term encompasses both prepaid and postpaid customers, regardless of the duration or terms of their service agreement.

10.    The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all information and documents that might otherwise be construed to be outside of its scope.

11.    The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## **INSTRUCTIONS**

1.    Unless otherwise specified, the relevant time period for these document requests (the "**Relevant Time Period**") is October 1, 2019 and ongoing.

2.    These discovery requests are to be answered separately and fully, in writing and

under oath, within twenty-one (21) days of the date of service on You.

3.      Responsive documents or electronically stored information must be produced in compliance with any Order regarding the production of electronically stored information that shall be entered by the Court.

4.      Any use of search terms or TAR in responding to these Requests must be conducted in compliance with any Order regarding search methodologies of electronically stored information that shall be entered by the Court.

5.      Should You find the meaning of any term, or request for production, to be unclear, You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6.      If You object to answering any of these discovery requests or withhold documents from production in response to the requests for production, in whole or in part, state Your objections and/or reasons for not responding and/or producing and state all factual and legal justifications that You believe support your objection or failure to answer or to produce. If You object to answering only part of a discovery request, specify the part to which You object and respond to the remainder.

7.      If You deem any discovery request to call for privileged information or documents, and assert privilege to avoid divulging the information or producing the documents for which You claim privilege, provide a list with respect to each item of information or each document withheld based on a claim of privilege, stating:

        a.   Description of allegedly privileged communication or document withheld;

b.  Persons present during or participating in allegedly privileged communication, or author(s) and recipient(s) of document withheld;

c.  Date of allegedly privileged communication or document withheld;

d.  Subject matter of allegedly privileged communication or document withheld;

e.  Type of document withheld (e.g., letter, memorandum or computer database);

f.  Nature of privilege(s) claimed; and

g.  The paragraph(s) of these discovery requests to which the allegedly privileged communication or document relates.

8.  These discovery requests are deemed to be continuing in nature, and You are required to amend or supplement the responses as the above-captioned matter continues.

## <u>DOCUMENT REQUESTS</u>

1.  An organization chart showing Your current corporate structure and/or corporate affiliations.

2.  Any operating agreement, shareholder agreement, or similar agreement reflecting or memorializing Your ownership structure.

3.  Documents and communications sufficient to show the identity, and each role and affiliation, of all employees and/or contractors who are employed in common by You and one or more of PWG, PWW, X Wireless, LLC ("X Wireless"), Odin Mobile, LLC ("Odin Mobile"), and Q Link Wireless, LLC ("Q Link").

4.  All documents and communications relating to any payments or transfers of funds or other assets between You and Paul Greene, and/or any entities that he is affiliated with, including PWG, PWW, X Wireless, Odin Mobile, and Q Link.

5.  All documents relating to the acquisition of Your equity by GFH1, LLC, including

without limitation documents concerning the source of funds for such acquisition.

6.      Any actual or proposed agreement between You and Paul Greene.

7.      All documents and communications concerning any actual or proposed agreement between You and Paul Greene and/or any entity under his control, including PWG, PWW, X Wireless, Odin Mobile, and Q Link.

8.      Your financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.

9.      Documents and communications sufficient to show all Your agreements with Subscribers, customers, and/or corporate affiliates that refer to and/or include as a party PWG, PWW, StandUp Wireless, Odin Mobile, and/or X Wireless.

Dated: Washington, D.C.                    /s/      DRAFT_____
 November ___, 2024                         David Daniels
                                            Perkins Coie LLP
                                            700 13th Street, NW, Suite 600
                                            Washington, DC 20005

                                            David Gold (*admitted pro hac vice*)
                                            Perkins Coie LLP
                                            110 North Wacker Drive, Suite 3400
                                            Chicago, IL 60606-1511

                                            *Attorneys for T-Mobile*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury under the laws of the State of

_____ that, on _____, 2024, he/she/they caused to be served on the

person(s) listed below in the manner shown:

Document Title(s)

*Service List*

☐    United States Mail, First Class
☐    By Messenger
☐    By Facsimile
☐    By E-Mail

Dated at _____ [city/state], this _____ day of _____, 2024.

_____
Signer Name