**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| In re: | (Chapter 11) |
| Prepaid Wireless Group, LLC,[1] | Case No. 24-18852 (MCR) |
| Debtor. | |

**DEBTOR'S OBJECTION TO T-MOBILE USA, INC.'S MOTION
FOR ENTRY OF AN ORDER AUTHORIZING REQUESTS FOR PRODUCTION,
THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS
AND THE PROVISION OF TESTIMONY PURSUANT TO RULE 2004
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are: Prepaid Wireless Group, LLC (5159). The Debtor's principal address is 6100 Executive Blvd, #202, Rockville, MD 20852.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.   General Background ................................................................................................ 3

    II.  Events Leading to the Debtor's Chapter 11 Filing ................................................ 3

    III. T-Mobile's Entry into the MVNA Market ........................................................... 4

    IV. The Rule 2004 Motion ......................................................................................... 5

OBJECTION ........................................................................................................................ 5

    I.   The Rule 2004 Motion should be denied to give the Debtor the opportunity to focus on formulating and pursuing confirmation of a 100% payment plan during the exclusivity period for doing so provided under Section 1121 of the Bankruptcy Code .......................................... 5

    II.  The Rule 2004 Motion also should be denied as beyond the scope of Rule 2004 and improperly broad and unduly burdensome. ............................................................. 7

    III. In the alternative, any relief granted should be much more limited in scope and concern only matters relating to the Debtor's ability to reorganize. ..................................... 13

CONCLUSION ................................................................................................................... 15

68661/0001-49013019

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re AOG Entm't, Inc.,
    558 B.R. 98 (Bankr. S.D.N.Y. 2016) ..................................................................7, 13

In re Council of Unit Owners of the 100 Harborview Condo.,
    Case No. 16-13049-JS (Bankr. D. Md. July 1, 2016) ............................................6

In re Dinubilo,
    177 B.R. 932 (E.D. Cal. 1993)..............................................................................14

In re Drexel Burnham Lambert Grp., Inc.,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) .................................................................13

In re Duratech Indus., Inc.,
    241 B.R. 291 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) ..........10, 11

In re Gawker Media LLC,
    No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ..................14, 15

In re Hammond,
    140 B.R. 197 (Bankr. S.D. Ohio 1992)..................................................................12

In re Kearney,
    590 B.R. 913(Bankr. D. N. Mex. 2018)..............................................................10, 13

In re Kleynerman,
    617 B.R. 122 (Bankr. E.D. Wis. 2020) ..............................................................10, 11

In re Lee,
    Case No. BAP HI-20-1250-GBS, 2021 WL 2283910 (B.A.P. 9th Cir. June 3,
    2021) ..........................................................................................................................7

McLaughlin v. McPhail,
    707 F.2d 800 (4th. Cir. 1983) ..................................................................................6

In re Millennium Lab Holdings II, LLC,
    562 B.R. 614 (Bankr. D. Del. 2016) ........................................................................7

In re Moore Trucking, Inc.,
    Case No. 2:20-BK-20136, 2020 WL 6948987 (Bankr. S.D.W. Va. July 14,
    2020) ..........................................................................................................................6

In re Novation Cos., Inc,
    Case No. 16-19745-DER (Bankr. D. Md. Nov. 10, 2016) ......................................6

68661/0001-49013019

In re Ramadan,
   Case No. 11-02734-8-SWH, 2012 WL 1230272 (Bankr. E.D.N.C. Apr. 12,
   2012) ..............................................................................................................................6

In re Symington,
   209 B.R. 678 (Bankr. D. Md. 1997) ...............................................................8, 10

In re Texaco, Inc.,
   79 B.R. 551 (Bankr. S.D.N.Y. 1987) .....................................................................12

In re Toys "R" Us, Inc.,
   Case No. 17-34665 (KLP) (Bankr. E.D. Va. Dec. 26, 2016) ...................................6

In re Transmar Commodity Grp. Ltd.,
   2018 WL 4006324 (Bankr. S.D.N.Y. Aug. 17, 2018) ......................................7, 13

**Statutes**

Bankruptcy Code Sections 1107(a) and 1108.................................................................3

Bankruptcy Code Section 1121 ................................................................................5, 7

**Other Authorities**

Bankruptcy Rule 2004 ......................................................................... *passim*

68661/0001-49013019

Prepaid Wireless Group, LLC, the debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to *T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 61] (the "Rule 2004 Motion" or the "Motion").  In support of this Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor filed this Chapter 11 case to prevent T-Mobile USA, Inc. ("T-Mobile") from forcing the Debtor out of business by terminating services to the Debtor based on a demand for a very large security deposit that the Debtor disputed and could not pay.  The Debtor has stated its intention, and reaffirms it here, to pay all creditors in full, including T-Mobile, to the extent of all allowed claims under a Chapter 11 plan of reorganization.

2.      There are essentially two basic ways to achieve this.  The one preferred by the Debtor is for the Debtor and T-Mobile to negotiate a business deal that will allow the parties to restore the amicable, mutually beneficial, and collaborative relationship the parties enjoyed for a number of years before conflicts arose between them in 2024.  Any such agreement must provide the Debtor with protections against post-confirmation actions by T-Mobile that would, once again, place the Debtor and the survival of its business in jeopardy.  The alternative is for the Debtor and T-Mobile to resort to litigation that may be necessary with respect to confirmation of a contested Chapter 11 plan and/or a motion to assume the T-Mobile contract, or other litigation concerning the parties' respective rights and obligations under their Wholesale Supply Agreement dated January 3, 2012 (the "WSA").

3.      Regrettably, at the very early stage of this case, T-Mobile chose the litigation option, by filing the Rule 2004 Motion without even conferring with the Debtor in advance,

requesting the Court to authorize T-Mobile to issue subpoenas not only to the Debtor and its wholly-owned subsidiary but also to other companies in which the Debtor's CEO, Paul Greene, has ownership interests or other involvement and further requesting blanket authority to issue multiple document requests to multiple parties and to take multiple depositions. If the Motion were to be granted, responding to the Motion would become the primary focus of the Debtor's Chapter 11 case and a drain on cash and other resources the Debtor hopes to devote to its Chapter 11 plan of reorganization. Such a diversion of the Debtor's reorganization efforts and resources would serve no good purpose and certainly would not be in the best interest of the Debtor, creditors, or the estate.

4.     This case has just concluded its initial stage, with the Debtor having filed its bankruptcy schedules and statement of financial affairs, provided information to the Office of the United States Trustee for the District of Maryland (the "U.S. Trustee") as required and requested, having completed its Section 341 meeting where the Debtor responded to questions from counsel for the U.S. Trustee and for T-Mobile USA, Inc., and having requested and received the Court's approval of "first-day" motions which have allowed the Debtor to stabilize its business operations and to continue to serve those parties who depend on the Debtor's provision of cellular services.

5.     Now is the opportune time for the Debtor and T-Mobile to focus their efforts and resources to serious discussions concerning a resolution of issues and formulation of terms of a Chapter 11 plan. If those efforts fail, then it may well be necessary to devote significant resources to litigation to resolve this case. The Debtor therefore respectfully asks the Court, on the grounds set forth below, to exercise the broad discretion provided by Bankruptcy Rule 2004 with respect to whether to grant relief under the Rule, and if so when, and to deny the Motion for now.

6.      In addition, the Rule 2004 Motion is overly and improperly broad in ways that go beyond the permitted scope of Rule 2004 discovery, includes discovery requests seeking proprietary information that T-Mobile could misuse as a direct competitor of the Debtor and other improper requests, and would be unduly burdensome—and unreasonably costly—for the Debtor to be subjected to such requests without any comparable benefit to T-Mobile.  If the Court were to be inclined to grant any relief to T-Mobile at this stage of the case, the Debtor respectfully requests that the scope of documents requested and the parties subject to the request be narrowed, and the ability of T-Mobile to conduct depositions be limited as set forth below.

## **BACKGROUND**

### I.      **General Background**

7.      On October 21, 2024 (the "Petition Date"), the Debtor filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

8.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

9.      No official committee of unsecured creditors has been appointed.

10.      No request for a trustee or examiner has been made in this Chapter 11 Case.

11.      On November 25, 2024, the U.S. Trustee conducted the Section 341 meeting (the "341 Meeting"), which lasted approximately 1.5 hours and included an opportunity for all creditors, including T-Mobile, to ask questions, to which the Debtor responded until the meeting was concluded by the U.S. Trustee.

### II.      **Events Leading to the Debtor's Chapter 11 Filing**

12.      The Debtor is a Mobile Virtual Network Aggregator ("MVNA") whose business consists of purchasing wireless communications, voice, messaging and data services in bulk from T-Mobile USA, Inc. pursuant to the terms of the WSA and reselling these services through its

wholly-owned subsidiary, Prepaid Wireless Wholesale, LLC ("PWW") to approximately 144 wholesale "Mobile Virtual Network Operators" ("MVNOs"), each of which sells and distributes the Debtor's services directly to their respective customers or end users.  Prior to bankruptcy, the Debtor, through PWW and the MVNOs, provided mobile telephone services to more than 4.5 million Americans in 42 states -- over 80% of whom are low-income individuals.

13.     For almost all of the more than 12 years of the WSA between T-Mobile and the Debtor, the vendor-customer relationship was collaborative, generally amicable and mutually beneficial.  In the months preceding the commencement of this Chapter 11 case, the relationship took a turn for the worse.  Ultimately, the Debtor was forced to file for relief under Chapter 11 to prevent T-Mobile from taking actions that would have forced the Debtor out of business, to the detriment of all of the MVNOs and individual customers who depend on the Debtor's services.

**III.    T-Mobile's Entry into the MVNA Market**

14.     On May 1, 2024, T-Mobile acquired the Ka'ena Corporation (the "Ka'ena Acquisition") whose portfolio included direct-to-consumer prepaid wireless brand Mint Mobile and internationally-focused value brand Ultra Mobile, as well as wholesale wireless solutions provider Plum.  Plum is an MVNA and a direct competitor of the Debtor.  A copy of the press release announcing the Ka'ena Acquisition is attached hereto as **Exhibit A**.

15.     On July 18, 2024, T-Mobile launched its "Your Name, Our Wireless" campaign through which it advertised its wireless communications, voice, messaging and data services directly to the Debtor's main customer base— MVNOs.  A copy of the press release announcing the "Your Name, Our Wireless" campaign is attached hereto as **Exhibit B**.

16.     In what might be more than coincidence, T-Mobile became more hostile toward the Debtor around the same time as T-Mobile became its competitor.

4

IV.     **The Rule 2004 Motion**

17.     On November 26, 2024 —one day after the meeting of creditors—T-Mobile filed the Rule 2004 Motion.  The Rule 2004 Motion was filed with no warning and with no attempt to confer with Debtor's counsel in direct contravention of the Discovery Guidelines of the United States District Court for the District of Maryland (the "Discovery Guidelines").

18.     On December 4, 2024, the Debtor filed the *Debtor's Motion to Extend the Time to Respond to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 73] (the "Motion to Extend Time"), seeking to extend its time to respond to the Rule 2004 Motion to January 2, 2025.

19.     On December 5, 2024, the Court entered the *Order Extending Debtor's Time to Respond to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 78] (the "Extension Order"), granting the relief requested in the Motion to Extend Time.

## OBJECTION

I.     **The Rule 2004 Motion should be denied to give the Debtor the opportunity to focus on formulating and pursuing confirmation of a 100% payment plan during the exclusivity period for doing so provided under Section 1121 of the Bankruptcy Code.**

20.     Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[o]n a party in interest's motion, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  Such examination can only relate to: "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." *Id.* 2004(b).

21.     Importantly, "[b]ecause Rule 2004(a) provides that the court *may* order the examination of any entity, its plain meaning grants to bankruptcy courts complete discretion in determining whether a Rule 2004 examination is appropriate."  In re Ramadan, Case No. 11-02734-8-SWH, 2012 WL 1230272, at *2 (Bankr. E.D.N.C. Apr. 12, 2012) (citing In re French, 145 B.R. 991, 992 (Bankr. D.S.D. 1992)); see also McLaughlin v. McPhail, 707 F.2d 800, 804 (4th. Cir. 1983) ("Rule 205 [now Bankruptcy Rule 2004] commits to the sound discretion of the bankruptcy court the decision whether to require examination of a party.").  Courts exercise their discretion to grant a motion seeking a Bankruptcy Rule 2004 examination only where "the party moving for examination has [established its] burden of showing good cause for the examination."  In re Moore Trucking, Inc., Case No. 2:20-BK-20136, 2020 WL 6948987, at *7 (Bankr. S.D.W. Va. July 14, 2020).

22.     Furthermore, it does not appear to be customary for this Court or courts in the Fourth Circuit to grant Bankruptcy Rule 2004 examinations against a debtor this early on in a Chapter 11 Case.  See, e.g., In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D. Va. Dec. 26, 2016) [Docket No. 1374] (granting motion for Bankruptcy Rule 2004 examination of debtors 98 days into Chapter 11 Case); In re Novation Cos., Inc, Case No. 16-19745-DER (Bankr. D. Md. Nov. 10, 2016) [Docket No. 200] (113 days); In re Council of Unit Owners of the 100 Harborview Condo., Case No. 16-13049-JS (Bankr. D. Md. July 1, 2016) [Docket No. 139] (114 days).

23.     In the present case, the relationship between T-Mobile and the Debtor under the WSA is an executory contract on which the Debtor's entire business depends.  For the Debtor to remain in business and achieve a successful reorganization, the Debtor will need to assume the WSA and pay T-Mobile in full.

24.     Most of the far-ranging discovery requested in T-Mobile's Rule 2004 Motion does not even concern the Debtor's business.  Instead, it is on other companies in which the Debtor's CEO, Paul Greene, has interests.  Consistent with this Court's broad discretion in determining whether and when to grant any relief under Bankruptcy Rule 2004, the Debtor respectfully asks the Court to exercise this discretion to deny the Rule 2004 Motion without prejudice to T-Mobile's right to renew it after the expiration of the Debtor's exclusive period for filing and obtaining acceptance of a Chapter 11 plan under Section 1121 of the Bankruptcy Code.  This will allow the parties to focus on a successful reorganization that will result in full payment of all creditors without having monies and other resources diverted to discovery focused on companies other than the Debtor.

## II.    The Rule 2004 Motion also should be denied as beyond the scope of Rule 2004 and improperly broad.

25.     Even if a movant establishes that good cause exists for some relief under Bankruptcy Rule 2004, the bankruptcy court must also determine whether the request is unduly burdensome by "balancing the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."  In re Transmar Commodity Grp. Ltd., 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (quoting In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)).  Good cause may exist where the information requested by the Bankruptcy Rule 2004 examination is necessary to establish the movant's claim or if denial to access of such information would cause the movant undue hardship or injustice.  See In re Lee, Case No. BAP HI-20-1250-GBS, 2021 WL 2283910, at *4 (B.A.P. 9th Cir. June 3, 2021); see also In re AOG Entm't, Inc., 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016); In re Millennium Lab Holdings II, LLC, 562 B.R. 614, 627 (Bankr. D. Del. 2016).  Additionally, and

critical here, a Bankruptcy Rule 2004 examination must be both "relevant and reasonable." In re Symington, 209 B.R. 678, 684-85 (Bankr. D. Md. 1997).

26.    T-Mobile has failed to carry its burden of showing good cause for the Rule 2004 relief requested, as the multiple subpoenas to non-Debtor parties requested and the categories of documents requested are beyond the scope of a proper Rule 2004 request and overly broad. T-Mobile's premise for the relief requested is that it is "crucial" for T-Mobile to investigate the Debtor's "financial structure, history and plans" so that it may evaluate the Debtor's "ability to reorganize." Motion, ¶ 45. This premise is belied by the nature and scope of the information requested in the document requests (the "Document Requests") and the fact that the targets of the subpoenas T-Mobile seeks blanket authority to issue are non-debtor parties in which the Debtor's CEO, Paul Greene, has interests and which exceed the scope of Bankruptcy Rule 2004 examinations as established by relevant case law. See Rule 2004 Motion, Ex. B-G.

27.    A review of T-Mobile's Document Requests reveals that the requested discovery has nothing to do with T-Mobile's claim and T-Mobile surely cannot honestly claim that it needs the discovery to avoid hardship or injustice. A sampling of the problems with, and improper scope of, the Document Requests includes:

- T-Mobile's proposed document requests to the Debtor, attached to the Rule 2004 Motion as Exhibit B, define "You" and/or "Your" to mean as follows:

  > Prepaid Wireless Group, LLC ("PWG"), and any of its past or present corporate affiliates, divisions, subgroups, subsidiaries (including Prepaid Wireless Wholesale, LLC, "PWW"), parent corporations, predecessors and successors in interest, and any past or present officers (such as Mr. Paul Greene), directors, trustees, agents, employees, servants, consultants, representatives, **attorneys**, investigators, or entities who are in possession of or may have obtained information for or on behalf of PWG, or who are acting or purporting to act on behalf of PWG.

8

(emphasis added).  Instruction No. 1 states that the relevant time period for the requests is from October 1, 2019 and ongoing.  See Rule 2004 Motion, Ex. B-G.  Request No. 2 seeks production of "**Your**" financial reports, including, but not limited to, a copy of each annual, quarterly, monthly, and/or weekly financial report.  Since "Your" means the Debtor's attorneys, and Request No. 2 seeks "Your" financial reporting, Request No. 2 literally these requests production of annual, quarterly, monthly and/or weekly financial reporting from the law firm of Cole Schotz P.C. as well as all non-debtor affiliates of the Debtor.

- T-Mobile offers no reason as to why October 1, 2019—5 years ago— should be the starting point for the scope of examination when the Debtor was solvent until shortly before the Petition Date when T-Mobile made an unexpected demand for a security deposit the Debtor could not pay.  In fact, the year 2019 only appears once in the Rule 2004 Motion, where T-Mobile discusses the period of time where Q Link and its CEO were under investigation by the Department of Justice–a matter completely irrelevant to the Debtor's Chapter 11 Case.  See Rule 2004 Motion, ¶ 33.

- The Document Requests for the Debtor and PWW contain requests for: (i) "[w]ith respect to T-Mobile, all agreements with any end user, third party reseller, subscriber, or MVNO and (ii) "[d]ocuments and communications sufficient to show all Your agreements with Subscribers, customers, and/or corporate affiliates that refer to and/or include as a party [Debtor], StandUp Wireless, X Wireless, and/or Q Link."  Rule 2004 Motion Ex. B, Document Request 10; Ex. C, Document Request 19.  These requests seek proprietary information that T-Mobile could use as a competitor of the Debtor to attempt to solicit customers who are part of the Debtor's business and network, and therefore cannot properly be included in any information provided to T-Mobile without exposing the Debtor to material harm.

- The Document Request for the Debtor asks for the Debtor's general ledger.  See Rule 2004 Motion Ex. B, Document Request 14.  Such an intrusive request, which would provide T-Mobile with every detail of the Debtor's business, should never be approved, especially given that T-Mobile is a competitor of the Debtor.

28.    The Document Requests for the most part have nothing to do with either T-Mobile's claim or an honest evaluation of the Debtor's ability to reorganize, and denying the Motion will cause T-Mobile no undue hardship.  And requesting documents for periods going back 5 years is beyond anything conceivably relevant to the Debtor's bankruptcy case, unduly burdensome, and fails the test of being necessary for a proper purpose while taking into account the burden on the

party subject to the request compared to the importance and relevance of the information requested. See supra at ¶ 25.

29.     Accordingly, T-Mobile has failed to establish good cause for the overly broad and irrelevant Document Requests and its request for authority to issue multiple subpoenas to non-debtor parties contained in the Rule 2004 Motion, and the Motion should be denied.

**a.      T-Mobile has failed to carry its burden to show that the relief requested is made for a proper purpose.**

30.     Good cause to grant a Bankruptcy Rule 2004 motion does not exist where the request is made for an improper purpose.  See In re Duratech Indus., Inc., 241 B.R. 291, 296 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) ("The case law is replete with holdings that resort to Rule 2004 cannot include discovery conducted in bad faith or for improper purposes.").  An improper purpose exists where the motion is intended to annoy, embarrass, oppress, or harass the examinee or to further a private agenda of the movant.  See In re Symington, 209 B.R. at 684-85 ("Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined."); In re Kleynerman, 617 B.R. 122, 129 (Bankr. E.D. Wis. 2020) ("Courts also assess whether the motion was brought for an improper purpose, such as to harass or to further a private agenda.").  Courts have also recognized that "'Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."  In re Kearney, 590 B.R. 913, 921(Bankr. D. N. Mex. 2018) (citations omitted).

31.     In view of the disconnect between T-Mobile's purported reason for filing the Motion, *see supra* at ¶ 26, and the nature and targets of the document requests and subpoenas,  it appears that T-Mobile is attempting to use Rule 2004 for the improper purposes of unduly burdening the Debtor, making it more difficult for the Debtor to emerge from bankruptcy, to further T-Mobile's private agenda as a competitor of the Debtor, and to investigate non-debtor

companies in which the Debtor's CEO has an interest or involvement.  Evidence of T-Mobile's agenda includes the request that the documents to be produced cover a 5-year period, which is unduly burdensome, and also include document requests for "all agreements with any end user, third party reseller, subscriber or MVNO", Exhibit B, Document Request 10, and "documents and communications . . . with any governmental body or agency as to . . . any allegation that T-Mobile adversely impacted Your financial position," Rule 2004 Motion Ex. B, Document Request 27, by which T-Mobile apparently is concerned about federal government oversight of its actions placing the Debtor's business in jeopardy.  T-Mobile's attempt to obtain the Debtor's proprietary information concerning its customers and end users, when T-Mobile is a competitor, cannot possibly be justified as necessary for T-Mobile as a creditor and contract counterparty with the Debtor.

32.    In <u>In re Duratech Industries, Inc.</u>, the bankruptcy court denied a motion for a Bankruptcy Rule 2004 examination where a business competitor tried to use Rule 2004 for the improper purpose of taking over the debtor's business.  <u>See</u> 241 B.R. at 296-99.  Judge Bernstein stated in his opinion that given the circumstances of the case, the competitor's "artfully drafted" Bankruptcy Rule 2004 motion did not pass the "smell test."  <u>See</u> 241 B.R. at 297 ("In the vernacular of bankruptcy lawyers, this Application does not pass the 'smell test.'").  The Debtor submits that given the circumstances of this case, T-Mobile's Motion also does not pass the "smell test" of having a proper purpose for burdening the Debtor and the Debtor's estate with the requirement of responding to T-Mobile's document requests and having to participate in multiple depositions if T-Mobile were to be given the blanket subpoena authority requested.

11

b.    **The Rule 2004 Motion also should be denied for being unduly burdensome on the Debtor and the Debtor's estate.**

33.    Even where a finding of good cause is made, a court may still deny a motion seeking a Bankruptcy Rule 2004 examination where it is "unduly burdensome." In re Kleynerman, 617 B.R. at 129 (citing In re Kearney, 590 B.R. 913, 921 (Bankr. D.N.M. 2018)) ("In addition to assessing whether a Rule 2004 request is made with 'good cause,' another consideration is whether the request is unduly burdensome."). When determining whether the information sought by the movant is unduly burdensome, the bankruptcy court must use its wide discretion to weigh the burden of production by the examinee against the benefit of the information to the movant. See In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor."); see also In re Hammond, 140 B.R. 197 (Bankr. S.D. Ohio 1992) ("[T]he bankruptcy court must also balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure.").

34.    The Rule 2004 Motion should be denied not only for T-Mobile's failure to establish good cause, but also for being unduly burdensome on the Debtor and the Debtor's estate. To impose upon the Debtor, at this time, the unnecessary legal fees and costs, as well as the time demanded, to respond to the Rule 2004 Motion would only serve to distract the Debtor from its goal of completing a 100% payment plan of reorganization and impose additional administrative burdens on the estate.

35.    Any legitimate benefit relevant to this Chapter 11 case that T-Mobile might argue it would receive from the discovery requested is outweighed by the burden on the Debtor that would be imposed by granting the requested relief. The imbalance between the minimal benefit, if any, to T-Mobile and the burden on the Debtor's estate with respect to the requested document

12

requests and subpoenas provides additional grounds for denying the Motion at this stage of the case.

**III.    In the alternative, any relief granted should be much more limited in scope and concern only matters relating to the Debtor's ability to reorganize.**

36.    In the event the Court were to decide not to deny the Rule 2004 Motion outright, without prejudice to T-Mobile's right to renew the Motion after expiration of the Debtor's exclusive period for filing a Chapter 11 plan of reorganization, the Debtor respectfully requests that the scope of the discovery permitted be narrowed and limited consistent with the principles and concerns addressed above.

37.    There is no absolute right to any discovery under Bankruptcy Rule 2004 ("On motion . . . , the court **may** order").  See Bankr. Rule 2004(a) (emphasis added);  see also In re Kearney, 590 B.R. at 913 ("Courts have used this permissive, conditional language to restrict discovery that appears unduly intrusive or burdensome."); In re Drexel Burnham Lambert Grp., Inc., 123 B.R. at 711 (although Rule 2004 examination can be compared to a fishing expedition, "the net, in the discretion of the Court, can be carefully stitched to limit its catch").

38.    Courts routinely limit the scope of Bankruptcy Rule 2004 discovery where they find that good cause does not exist for certain portions of the requested information or where certain portions are unduly burdensome.  See In re Transmar Commodity Grp. Ltd., 2018 WL 4006324, at *10 (granting in part and denying in part motion for Bankruptcy Rule 2004 examination where good cause did not exist to grant the motion for a portion of the requested information); In re Kearney, 590 B.R. at 926 (limiting scope of Bankruptcy Rule 2004 discovery where production of certain requested information would be unduly burdensome for the examinee to produce).

39.     Even if documents requested meet the requirement of relevance, "'relevance does not alone demonstrate that there is good cause for requiring their production." In re AOG Entm't, Inc., 558 B.R. at 109 (quoting In re Drexel Burnham Lambert Grp., Inc., 123 B.R. at 712.

40.     In some cases, courts have directed parties disputing the scope of a Bankruptcy Rule 2004 examination to work out a consensual scope of examination by a date certain, and if no consensual scope can be reached, to submit a proposed order and counter order to the Court.  See In re Gawker Media LLC, No. 16-11700 (SMB), 2017 WL 2804870, at *7 (Bankr. S.D.N.Y. June 28, 2017) ("Rather than parse the initial list of requests in light of these limitations, the Court directs the parties to meet and confer with a view to submitting an order setting forth the [movant]'s requests and the specific limitations on those requests. If the parties cannot agree, they may settle proposed orders and counter orders on notice.").

41.     In the present case, the Debtor requests that if the Court were to determine not to deny the Rule 2004 Motion for now, at a minimum the scope of the discovery permitted to be taken at this point be limited to categories clearly relevant to the Debtor and the Debtor's estate and be narrowed to the Debtor and PWW, as the other targets of T-Mobile's requested subpoenas (Paul Greene, Q Link, StandUp, and X Wireless) do not have information that is necessary or relevant to the ability of the Debtor to formulate a successful Chapter 11 plan that will pay creditors, including T-Mobile, in full.  See In re Dinubilo, 177 B.R. 932, 940 (E.D. Cal. 1993) ("[T]hird parties subject to examination under Rule 2004 are 'only those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy.'").

42.     There is no need for this Court to be burdened with going through every "Instruction" and each Document Request to determine whether any of them are relevant or proper

14

in whole or in part, as the parties and their counsel, under our Local Rules, have a duty to confer with respect to all discovery matters, and the Debtor and its counsel intend to do just that, after filing this Objection.  If the Court were to grant the Motion in part by permitting limited discovery at this early stage of the case and the Debtor and T-Mobile are unable to agree on the proper scope of the 2004 discovery to be permitted, the Debtor suggests that the parties be required to submit competing proposed orders for the Court to decide, in its broad discretion, the scope of the examination to be permitted at this point in the case, as was done in In re Gawker Media LLC.  See 2017 WL 2804870, at *5.

## **CONCLUSION**

43.     At this stage of the case, the best interest of all parties will be served by denying the Motion to give the Debtor the opportunity to focus on formulating a Chapter 11 plan of reorganization that will pay all creditors, including T-Mobile, in full.

Dated:  January 2, 2025

**COLE SCHOTZ P.C.**

By:  _/s/ Irving E. Walker_

Irving E. Walker (Bar No. 00179)
Gary H. Leibowitz (Bar No. 24717)
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667 (fax)
iwalker@coleschotz.com
gleibowitz@coleschotz.com

*Counsel for Debtor and Debtor-In-Possession*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 2, 2025, an electronic copy of the *Debtor's Objection to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "<u>Objection</u>") will be served electronically by the Court's CM/ECF system on all parties receiving service from the CM/ECF system, including the following:

| | |
|---|---|
| Lynn Kohen, Esquire | David W.T. Daniels, Esquire |
| Office of the United States Trustee | Perkins Coie LLP |
| 6305 Ivy Lane, Suite 600 | 700 13th St NW #600 |
| Greenbelt, MD 20770 | Washington, D.C. 20005 |

I FURTHER CERTIFY that on January 2, 2025, a copy of the Objection was served via first-class mail, postage prepaid, on the parties listed on the attached Service List.

Dated:  January 2, 2025          **COLE SCHOTZ P.C.**

By:  */s/ Irving E. Walker*
Irving E. Walker (Bar No. 00179)
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667 (fax)
iwalker@coleschotz.com

*Attorneys for Debtor and Debtor-In-Possession*

68661/0001-49013019

## SERVICE LIST

T-Mobile USA, Inc.
c/o David Gold, Esq.
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606

3C Interactive (IMImobile US)
DEPT 3412 P.O. Box 123412
Dallas, TX 75312-3412

Anthony G. Brown
Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202

CA Franchise Tax Board WH Svcs
P.O. Box 942867
Sacramento, CA 94267-0651

Call Centers India Inc
701 Fifth Avenue Suite 4200
Seattle, WA 98104

Cirries Technologies Inc.
300 N Coit Road Suite 700
Richardson, TX 75080

Colorado Department of Revenue
1881 Pierce St.
Lakewood, CO 80214

CSC Global
P.O. Box 7410023
Chicago, IL 60674

Erek L. Barron
United States Attorney's Office
District of MD
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201

Speedmark Transportation
131 N Lively Blvd
Elk Grove Village, IL 60007

State of Maryland DLLR
Division of Unemployment Insurance
1100 N. Eutaw Street, Room 401
Baltimore, MD 21201-2226

Federal Communications Commission
45 L Street NE
Washington, D.C. 20554-0001

Georgia Department of Revenue
P.O. Box 105544
Atlanta, GA 30348-5544

Internal Revenue Service
Centralized Insolvency Operation
1111 Constitution Ave. NW
Washington, D.C. 20224

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Inteserra JSI (FAStek)
151 Southhall Lane, Suite 450
Maitland, FL 32751

Iowa Department of Revenue
Attn: Bankruptcy Unit
P.O. Box 10471
Des Moines, IA 50306-9187

iPass (formally Syntegra)
1700 W. Irving Park Rd, Suite 209A
Chicago, IL 60613

Lingo Telecom, LLC dba Impact Telecom
9330 LBJ Freeway, Suite 944
Dallas, TX 75243

New York Department of Assessments 2
P.O. Box 15310
Albany, NY 12212-5310

New York Department of Assessments 3
P.O. Box 15179
Albany, NY 12212-5179

Phonecheck
12424 Wilshire Blvd Pl 12
Los Angeles, CA 90025

Syniverse Technologies LLC
12094 Collections Center Drive
Chicago, IL 60693

Secretary of the Treasury
15th and Pennsylvania Ave., N.W.
Washington, D.C. 20220-0001

Texas Comptroller of Public Accts
Revenue Accounting Div.
Bankruptcy Section
PO Box 13528
Austin, TX 78711-3528

Taxing Authority of Montgomery County
Division of Treasury
255 Rockville Pike, Suite L-15
Rockville, MD 20850-4188

Comptroller of Maryland
Bankruptcy Unit
7 St. Paul Street, Suite 230
Baltimore, MD 21202-1626

ShipTech
P.O. Box 8233
Carol Stream, IL 60197

Communication Network Services LLC
The Cooperage
2201 Old Court Road
Pikesville, MD 21208

X-Wireless, LLC
11565 Old Georgetown Road
Rockville, MD  20852

68661/0001-49013019