IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br><br>Prepaid Wireless Group, LLC,<br><br>       Debtor. | (Chapter 11)<br><br>Case No. 24-18852 (MCR) |

**NON-DEBTOR'S OBJECTION TO T-MOBILE USA, INC.'S MOTION
FOR ENTRY OF AN ORDER AUTHORIZING REQUESTS FOR PRODUCTION,
THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS
AND THE PROVISION OF TESTIMONY PURSUANT TO RULE 2004
<u>OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

**TABLE OF CONTENTS**

PRELIMIANRY STATEMENT………………………………………………………1

OBJECTION…………………………………………………………………………..4

I. T-Mobile's Request for Rule 2004 Examinations of Non-Debtors Is Not Warranted Because It Has Failed to Demonstrate Good Cause For Such Discovery and the Categories of Documents and Testimony it Seeks Are for an Improper Purpose……………………………………………………………….……4

II. T-Mobile's Proposed 2004 Exams of Non-Debtors are Beyond the Scope of Rule 2004 and are Improperly Broad and Unduly Burdensome…………………………………………………….……………….……9

CONCLUSION…………………………………………………………………….…..10

# **TABLE OF AUTHORITIES**

Cases                                                                                                                Page(s)

In re Blinder, Robinson & Co., Inc., 127 B.R. 267, 274 (D.Col. 1991)……………………………………………………………………………….5

In re *French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992)………………………………………………………………….……………4-5

In re Hammond, 140 B.R. 197 (Bankr. S.D. Ohio 1992)………………………………………………..……………………………………….9

In re Kearney, 590 B.R. 913, 921(Bankr. D. N. Mex. 2018)…………………………………………………………………………………..9, 11

*McLaughlin v. McPhail,* 707 F.2d 800, 804 (4th. Cir. 1983)……………………………………………………………….……………….4-5

In re Mittco, Inc., 44 B.R. 35, 36 (Bank.E.D.Wis. 1984))………………………………………..………………………………….………..5

In re Moore Trucking, Inc.,
    Case No. 2:20-BK-20136, 2020 WL 6948987 (Bankr. S.D.W. Va. July 14, 2020)………………………………………………………………….……………4

In re Ramadan,
    Case No. 11-02734-8-SWH, 2012 WL 1230272 (Bankr. E.D.N.C. Apr. 12, 2012)………………………………………………………………….……………4-5

In re Table Talk, Inc., 51 B.R. 143, 145 (Bank.D.Mass. 1985)……………………………………………………………….……………….5

In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)………………………………………………………………………………….9

In re Transmar Commodity Grp. Ltd., 2018 WL 4006324 (Bankr. S.D.N.Y. Aug. 17, 2018)……………………………………………………………….11


Other Authorities

Bankruptcy Rule 2004…………………………………………………………………………..*Passim*

Non-Debtors, Paul Greene ("Greene"), Global Connection Inc. of America, LLC d/b/a StandUp Wireless ("SUW") and X Wireless, LLC ("X Wireless") (collectively, the "Non-Debtors"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to *T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 61] (the "Rule 2004 Motion" or the "Motion"). In support of this Objection, Greene, SUW and X Wireless respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtor, Prepaid Wireless Group LLC (the "Debtor" or "PWG"), filed this Chapter 11 as a last resort to stave off extinction after T-Mobile USA, Inc. ("T-Mobile") demanded it post a very large security deposit that the Debtor disputed and could not pay. *See Debtor's Objection to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2—4 of the Federal Rules of Bankruptcy Procedure,* ¶ 1 (the "Debtor's Objection").[1] The Debtor has stated its intention, upon confirming a plan of reorganization, to pay all creditors in full, including T-Mobile, to the extent of all allowed claims under a Chapter 11 plan of reorganization. *Id.*

2. Greene is the Chief Executive Officer of Debtor. SUW and X Wireless are separate businesses that each, in part, provide services related to Debtor's provisioning of broadband wireless services, primarily to low-income users throughout the United States.

---

[1] Non-Debtors incorporate herein by reference the arguments stated in Debtor's Objection.

1

3. On December 5, 2024, T-Mobile filed the Rule 2004 Motion which, in addition to seeking Court permission to pursue wide-ranging discovery from Debtor and its subsidiary Prepaid Wireless Wholesale, LLC, asks the Court to exercise its discretion to permit extensive discovery of documents and testimony of Non-Debtors Greene, SUW and X Wireless on matters that are, at best, only tangentially related to Debtor's financial operations and ability to successfully reorganize.[2]

4. Aside for a few, nominal in the context of the overall size of Debtor's recent and ongoing payment obligations to T-Mobile, which are more fully discussed below, T-Mobile's asserted basis for its 2004 discovery of Non-Debtors is wholly unrelated to Debtor's financial viability or ability to reorganize. T-Mobile's Rule 2004 Motion's main focus is on a company not owned by Debtor or the Non-Debtors. The Rule 2004 Motion devotes no less than fourteen paragraphs to describing the travails of Q-Link's criminal prosecution and alleged post-petition communications between Greene and his representatives and T-Mobile's representatives in an effort to justify the wide-ranging and intrusive examination of Non-Debtors' business affairs. *See* Rule 2004 Motion ¶¶ 4, 6 & 26-39.

5. Q Link is a MVNO that partnered with T-Mobile. *See* Rule 2004 Motion, ¶ 26-27. T-Mobile now apparently wishes through these 2004 examinations to explore if it has claims against Q Link, in which T-Mobile erroneously believes Debtor and/or Greene or a related entity has recently acquired an interest. By its own admission, T-Mobile is focused on transitioning Q Link's customers to other telecommunication providers. *Id.,* ¶ 35.

---

[2] On December 5, 2024, the Court entered the *Order Extending Debtor's Time to Respond to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 78].

2

6. In exhibits to the 2004 Motion, T-Mobile attaches what it describes as "riders" specifying the documents it seeks production of from Greene, StandUp and X Wireless.[3] Six of the nine categories of Exhibit D, consisting of T-Mobile's proposed 2004 examination of Greene, are devoted to inquiries associated with Q Link and post-petition communications between Greene and T-Mobile, and one unrelated at all to Debtor's operations. Exhibit F, the proposed documents sought under T-Mobile's 2004 examination of SUW, are either duplicative of what would be in Debtor's possession (Nos. 3, 4 & 7) or, on their face, would not result in obtaining information related to Debtor's financial stability or ability to reorganize (Nos. 1, 2, 5 & 6). The categories identified in Exhibit G, directed to X Wireless, are the same as those directed to SUW with the exception that T-Mobile has substituted a request seeking documents related to X Wireless' supposed acquisition of an entity GFH1, LLC (see No. 5) for one related to intercompany loans for SUW.

7. Perhaps revealing its true motive in pursuing Court approval to obtain such wide-ranging Rule 2004 discovery at such an early stage of Debtor's bankruptcy, T-Mobile's proposed 2004 examinations of both SUW and X Wireless seek Documents and communications sufficient to show all agreements related to the end-users of their wireless customers (see requests No. 9). As noted in Debtor's Objection, T-Mobile only recently completed the Ka'ena Acquisition, entering the market in competition with the Non-Debtors for low-income wireless subscribers. These should be seen as T-Mobile's effort to obtain proprietary customer information to obtain an unfair business advantage.

---

[3] It is important to point out that in footnote 1 to the Rule 2004 Motion, T Mobile has reserved its right, should the Motion be granted, to amend its Rule 2004 examination of Non-Debtors with additional document requests. This raises the prospect that T-Mobile seeks to issue subpoenas to Non-Debtors that are even broader than those submitted with the Rule 2004 Motion.

**OBJECTION**

**I.   T-Mobile's Request for Rule 2004 Examinations of Non-Debtors Is Not Warranted Because It Has Failed to Demonstrate Good Cause For Such Discovery and the Categories of Documents and Testimony it Seeks Are for an Improper Purpose.**

8.      Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[o]n a party in interest's motion, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  Such examination can only relate to: "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." Id. 2004(b).  In order to pursue a 2004 examination, the moving party must demonstrate good cause for the necessity of such examination.  In re Moore Trucking, Inc., Case No. 2:20-BK-20136, 2020 WL 6948987, at *7 (Bankr. S.D.W. Va. July 14, 2020). While a 2004 examination may also be pursued against non-debtors, provided good cause is established, it is axiomatic that such an examination cannot exceed what is otherwise permitted by Fed. Rule Bankr. P 2004. Whether a 2004 examination is permitted to proceed is within the sound discretion of the Court. In re Ramadan, Case No. 11-02734-8-SWH, 2012 WL 1230272, at *2 (Bankr. E.D.N.C. Apr. 12, 2012) (citing In re *French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992)); *see also* *McLaughlin v. McPhail*, 707 F.2d 800, 804 (4th. Cir. 1983) ("Rule 205 [now Bankruptcy Rule 2004] commits to the sound discretion of the bankruptcy court the decision whether to require examination of a party.").

9.      Moreover, while a Rule 2004 examination may be seen as a "fishing expedition," the "availability of Rule 2004 as a discovery tool is not unlimited." See In re Blinder, Robinson & Co., Inc., 127 B.R. 267, 274 (D.Col. 1991).  Courts have imposed limits on the use of Rule 2004 examinations where the purposes of the examination are to abuse or harass and it cannot stray into

4

matters which are not relevant to the basic inquiry. In re Table Talk, Inc., 51 B.R. 143, 145 (Bank.D.Mass. 1985) (citing In re Mittco, Inc., 44 B.R. 35, 36 (Bank.E.D.Wis. 1984)).

10. T-Mobile's Rule 2004 Motion attempts to accentuate its need for a far-reaching inquiry into Non-Debtors' corporate structure and financial stability by highlighting a handful of inter-company transfers. Those transfers, and the timing of those transfers, however, should be considered in the context of the whole of Debtor's long-time business relationship with T-Mobile. For example, T-Mobile has acknowledged that, until recently, Debtor routinely made payments to T-Mobile that amounted to $30 million to $40 million each month, and that such payments were on occasion only "tardy." See Rule 2004 Motion, ¶ 12. Between June and August, 2024, T-Mobile was paid over $115 million. See id. ¶ 18. As recently as September, 2024, T-Mobile was paid over $17 million. Id. ¶ 16. In light of these large payments made by Debtor, T-Mobile's assertion that such wide-ranging 2004 discovery of Non-Debtors financial information in order to assess the Debtor's ability to reorganize because of certain inter-company transfers made at a time that the Debtor was paying T-Mobile in full for its services, rings hollow.

11. Most revealingly, T-Mobile lets the pretext of a need to explore Debtor's sources of revenue slip and reveals that the actual purpose in seeking Rule 2004 discovery from Non-Debtors is to establish the relationship between Non-Debtors and Q Link and the business dealings between them, and to explore Greene's post-petition communications and interaction with T-Mobile. See Rule 2004 Motion, ¶ 6. T-Mobile offers no explanation, much less demonstrated any good cause, as to how potential business dealings with Q Link and Non-Debtors potentially impacts Debtor's ability to reorganize, or how Greene's conduct that occurred post-bankruptcy filing has any relation to the Debtor's ability to operate as a debtor in possession during the exclusivity period.

12. T-Mobile's focus on Q Link, and the Debtor's relationship with Q Link, is a red herring that has nothing to do with the Debtor's reorganization and, is a barely cloaked attempt for T-Mobile to obtain information in its collection efforts against Q Link and to further assume portions of Q Link's subscriber base. T-Mobile acknowledges its concern that the Debtor, along with Greene and other entities affiliated with Greene "are using Q Link in ways that may prevent T-Mobile from recovering which is owed from …Q link . . .". Rule 2009 Motion, ¶ 26. Contrary to T-Mobile's speculation, neither Greene nor any of the entities with which he is associated, own any interest in Q Link. More importantly, whatever Q Link's issues with the criminal justice system may be, they are unrelated to Non-Debtors and are no more than an attempt at misdirection used to convince the Court that discovery is appropriate because of the outrageous nature of Q Link's conduct.

13. Q Link is a wholly owned subsidiary of Quadrant Holdings, LLC which, upon information and belief, is owned and/or managed by Issa Asad ("Asad"). On August 19, 2024, Asad and Q Link were charged under a criminal Information in the matter of *United States of America v. Issa Asad and Q Link Wireless, LLC* (S.D. Fla, Case No. 24-20363-CR) wherein Mr. Asad and Q Link were charged with a variety of fraudulent acts associated with their operation of their lifeline related business. As part of the negotiations between Mr. Asad, through his counsel, and the Department of Justice, Asad agreed that he would sell the business of Q Link.

14. On August 28, 2024, Greene, through Aspen Marketing, Inc., an entity that Greene substantially owns, entered into an Option Agreement to purchase the membership interests of Q Link, LLC from its owner, Quadrant Holdings, LLC. At the same time, Gull Trap Holdings, LLC, another entity owned by Greene, purchased the operating assets of Q Link, LLC, and entered into a Management Agreement whereby Gull Trap Holdings, LLC would manage the business

operations of Q Link LLC until all necessary licenses, permits and approvals had been received, at which time Aspen Marketing, LLC would exercise its option to purchase the membership interests of Q Link. None of Debtor's assets were used in these transactions.

15. Unfortunately, the business of Q Link had been significantly crippled by a series of events that predated Greene's involvement with Q Link, and, as the business of Q Link has been decimated, in December 2024, Q Link ceased its operations. Aspen Marketing, LLC never exercised its option to purchase the membership interests of Q Link, and, with the exception of some subscriber accounts that have been transferred at the direction of Gull Trap Holdings, LLC, there are no remaining assets of Q Link that were purchased by Gull Trap Holdings, LLC.[4] There is nothing to be learned from an examination of Greene's personal involvement with Q Link that relate in any way to the acts, conduct or property, or the liabilities and financial condition of the Debtor that may affect the administration of the bankruptcy estate.

16. It is obvious, however, that T-Mobile remains interested in capturing Q Link's subscribers for itself, which is likely the real purpose behind its effort to convince the Court that it has a good faith basis to pursue 2004 discovery of Non-Debtors. T-Mobile's ulterior motive of pursuing discovery unrelated to a Debtor's activities, however, is not the proper purpose of a 2004 examination, especially when directed at non-debtors.

17. T-Mobile's effort to obtain Rule 2004 discovery of post-petition communications between Green and his representatives and T-Mobile's representatives should be viewed in the

---

[4] Upon information and belief, in late November 2024, T-Mobile transferred approximately 300,000 of the Q-Link subscribers that had been purchased by Gull Trap Holdings, LLC to its subsidiary, Assurance Wireless.

same vein as T-Mobile's attempt to bootstrap its interest in exploring Q Link to a 2004 examination of Non-Debtors. The fact that T-Mobile is miffed by Greene's strongly worded post-petition communication style comes through in the Rule 2009 Motion, as does T-Mobile's apparent concern about its own communication style. Nothing advanced in the Rule 2004 Motion, however, warrants the conclusion that Greene is incapable of operating Debtor as a debtor in possession. As T-Mobile admits, Greene has been successfully at the helm of a successful business relationship with T-Mobile for almost thirteen years that has seen the operative business agreement between them amended thirteen times. T-Mobile's assertion that Greene's ability to steer the Debtor through a successful organization because its feelings were hurt by a strongly worded email or other communications between the parties should be seen as nothing more than bluster in an effort to justify broad, intrusive discovery of Non-Debtors.

**II.    T-Mobile's Proposed 2004 Exams of Non-Debtors are Beyond the Scope of Rule 2004 and are Improperly Broad and Unduly Burdensome.**

18.     Even if T-Mobile had established good cause to pursue 2004 examinations of Non-Debtors, such discovery should be denied because its proposed Rule 2004 examinations seek the production of documents and examination beyond the scope of Rule 2004 and are improperly broad and unduly burdensome. Even where a finding of good cause is made, a court may still deny a motion seeking a Bankruptcy Rule 2004 examination where it is "unduly burdensome." In re Kleynerman, 617 B.R. at 129 (citing In re Kearney, 590 B.R. 913, 921 (Bankr. D.N.M. 2018)) ("In addition to assessing whether a Rule 2004 request is made with 'good cause,' another consideration is whether the request is unduly burdensome.").

19.     When determining whether the information sought by the movant is unduly burdensome, the bankruptcy court must use its wide discretion to weigh the burden of production by the examinee against the benefit of the information to the movant. See In re Texaco, Inc., 79

8

B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor."); see also In re Hammond, 140 B.R. 197 (Bankr. S.D. Ohio 1992) ("[T]he bankruptcy court must also balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure.").

20.     Moreover, courts have recognized that "'Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." In re Kearney, 590 B.R. 913, 921(Bankr. D. N. Mex. 2018) (citations omitted).

21.     Putting aside T-Mobile's document requests directed at Q Link[5] and Greene's communications post-petition, T-Mobile's document requests cast a wide net without any concern for the significant effort associated with responding or to ensure that they will result in the production of documents necessary to advance a proper purpose. For example, T-Mobile proposes issuing Rule 2004 subpoenas to SUW and X Wireless seeking "[a]ll documents and communications relating to payments or transfers of funds or other assets between You and Paul Greene, and/or any entities that he is affiliated with…". (Proposed Document Requests No. 4). Also, "[a[ll documents and communications concerning any actual or proposed agreement between You and Paul Greene and/or any entity under his control, including PWG, PWW, StandUp Wireless, Odin Mobile, and Q Link." (Proposed Document Requests No. 7). Both of these proposed requests cover a five-year period.

---

[5] The Non-Debtors are not aware as to whether T-Mobile has served notice of its motion on Q-Link. As an accommodation, the Debtor's business counsel has provided a copy of T-Mobile's motion to counsel for Q-Link, LLC.

22. Given the long-time business relationship between Debtor and T-Mobile, a period that spans thirteen years, these requests could potentially cover every document or data set created in the course of Non-Debtors' business over the last five years. Further, T-Mobile does not even attempt to limit its document inquiry to businesses which have any relationship to Debtor, seeking to inspect the financial dealings of any business Greene has been associated with in the last five years. Such broad, unfocused discovery is not for a proper purpose under Rule 2004 and is overly broad and unduly burdensome.

23. At a minimum, if T-Mobile is permitted to pursue 2004 exams of Non-Debtors at this early stage of the bankruptcy proceeding, it should not be allowed to pursue the broad unfettered discovery it seeks in the Rule 2004 Motion. Courts routinely limit the scope of Bankruptcy Rule 2004 discovery where they find that good cause does not exist for certain portions of the requested information or where certain portions are unduly burdensome. See In re Transmar Commodity Grp. Ltd., 2018 WL 4006324, at *10 (Bnkr. S.D.N.Y. Aug. 17, 2018) (granting in part and denying in part motion for Bankruptcy Rule 2004 examination where good cause did not exist to grant the motion for a portion of the requested information); In re Kearney, 590 B.R. at 926 (limiting scope of Bankruptcy Rule 2004 discovery where production of certain requested information would be unduly burdensome for the examinee to produce).

## CONCLUSION

24. For the foregoing reasons, T-Mobile's Rule 2004 Motion should be denied as it relates to Non-Debtors.

Respectfully submitted,

*/s/Kevin J Pascale*
Kevin J. Pascale AIS No. 9212170024

10

*/s/Meighan G. Burton*
Meighan G. Burron AIS No. 0512140002
Pascale Stevens, LLC
2700 Lighthouse Point East, Suite 500 Baltimore, Maryland 21224
(443) 863-5756 (o)
(443) 863-5751 (f)
kpascale@pascalestevens.com
mburton@pascalestevens.com
*Attorneys for Non-Debtors Paul Greene, Global Connection Inc. of America d/b/a StandUp Wireless and X Wireless LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 2, 2025, an electronic copy of the *Non-Debtor's Objection to T-Mobile USA, Inc.'s Motion for Entry of an Order Authorizing Requests for Production, the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "Non-Debtors' Objection") will be served electronically by the Court's CM/ECF system on the following:

Lynn Kohen, Esquire
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

Irving E. Walker, Esquire
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667 (fax)
iwalker@coleschotz.com

David W.T. Daniels, Esq.
Perkins Coie LLP
700 13th St NW #600
Washington, D.C. 20005

*Attorneys for Debtor and Debtor-In-Possession*

11

I FURTHER CERTIFY that on January 2, 2025, a copy of the Non-Debtors' Objection was served via first-class mail, postage prepaid, on the parties listed on the attached Service List.

>*/s/Kevin J Pascale*
>Kevin J. Pascale AIS No. 9212170024
>*/s/Meighan G. Burton*
>Meighan G. Burton AIS No. 0512140002
>Pascale Stevens, LLC
>2700 Lighthouse Point East, Suite 500 Baltimore, Maryland 21224
>(443) 863-5756 (o)
>(443) 863-5751 (f)
>kpascale@pascalestevens.com
>mburton@pascalestevens.com
>*Attorneys for Non-Debtors Paul Greene, Global Connection Inc. of America d/b/a StandUp Wireless and X Wireless LLC*